STATE OF NORTH CAROLINA v. DESTRY RICCARD

No. COA99-1494

(Filed 20 February 2001)

**Evidence— prior inconsistent statement—impeachment**

The trial court did not err in an assault and robbery prosecution by allowing the State to impeach two of its witnesses with prior statements to an officer where both witnesses admitted making the prior statements, one of them testified that certain parts of his statement were inaccurate and that he did not remember making parts of his statement, and the facts indicate good faith and an absence of subterfuge.

Appeal by defendant from judgment entered 24 August 1999 by Judge F. Donald Bridges in Gaston County Superior Court. Heard in the Court of Appeals 8 January 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Daniel P. O'Brien, for the State.*

*Charles L. Alston, Jr., for defendant-appellant.*

EAGLES, Chief Judge.

Defendant Destry Riccard was tried and found guilty of assault with a deadly weapon with intent to kill inflicting serious injury and robbery with a dangerous weapon in Gaston County Superior Court on 23 August 1999. He was sentenced to 110 to 141 months for assault with a deadly weapon with intent to kill inflicting serious injury and 77 to 102 months for robbery with a dangerous weapon. Defendant appeals. After careful review, we hold defendant received a fair trial free from prejudicial error.

At trial, Leon Henderson (victim) testified that on the night of 4 July 1998, he went to a car wash on Bessemer City Road in Gastonia. The victim testified that immediately before he began washing his car, he was poked in the back with a shotgun. He then testified that he turned around and was face to face with his assailant. The victim later identified this person in a photographic lineup, as well as at trial, as defendant. According to the victim, defendant pointed the shotgun in his face and demanded all the victim's money. The victim gave defendant approximately thirty dollars, after which defendant shot him in the left leg.

Derek Barnes (Barnes), defendant's cousin, testified on behalf of the State. Barnes testified that on the night of 4 July 1998, he went "riding" with defendant, Trey Reid (Reid) and Travis Watson (Watson) in a Ford Escort. Barnes testified that at approximately 11:00 p.m., the four men stopped at a car wash on Bessemer City Road to use the pay phone. According to Barnes, when he and Watson left the car to use the pay phone, they heard a gunshot and ran back to the car. Barnes then denied that he was aware defendant had a shotgun.

Barnes next testified that on 7 July 1998, he initiated a conversation with Detective Tony Wilson (Wilson) at the Gastonia Police Department. At this point, the State began to treat Barnes as a hostile witness, asking him leading questions. Defense counsel objected to the leading questions. Out of the presence of the jury, the State explained to the court that Barnes had testified to the events at issue differently on the stand than he had described them to Wilson on 7 July. The State then asked for permission to impeach Barnes with his prior statement to Wilson.

The State gave Barnes a copy of his statement to refresh his recollection. The following exchange then occurred:

THE COURT: Did you tell the police, "While we were on the phone, [defendant] got out of the vehicle's back seat and walked over to the next stall and shot a guy in the leg with a shotgun, then got back in the vehicle, and said, 'We have to go.' "?

A: See that's the part I was speaking of I didn't agree with because in order—

THE COURT: No. My question is did you tell that to the police?

A: I don't recall. Some of that statement I did say that stuff— some of the statement, but I never said that he got—I never—I didn't never say the part that he got back into the car and said, "Let's go," because he was in the car when I got there; but I did see him out of the car. That's what I'm saying.

THE COURT: All right. Did you say, "While we were on the phone, [defendant] got out of the vehicle's back seat and walked over to the next stall and shot a guy in the leg with a shotgun"?

A: No, because I never saw a shotgun. In order for me to say that I saw him go and shoot somebody with a shotgun, I would have to have seen the shotgun.

After hearing arguments, the trial court overruled defendant's objection to the State impeaching Barnes with his prior statement.

At the conclusion of the *voir dire* hearing, in the presence of the jury, the State asked Barnes, over objection, whether he recalled telling Wilson:

"While we were on the phone, [defendant] got out of the vehicle's back seat and walked over to the next stall and shot a guy in the leg with a shotgun, then got back in the vehicle and said, 'We have to go.' "

Again Barnes admitted to speaking with Detective Wilson, but denied having made portions of that statement and reiterated his earlier testimony.

Following Barnes' testimony, the State called Reid, whose sister is defendant's first cousin, to testify. Like Barnes, Reid testified to many of the details leading up to the shooting. Reid testified that on 4 July 1998, he watched a fireworks display with defendant, Barnes and Watson, and then the four men went "riding around." Reid then testified that they ended up at a car wash on Bessemer City Road to

use the pay phone. According to Reid, once they were at the car wash, Barnes and Watson used the pay phone, while he stayed in the car with defendant. Reid further testified that defendant left the car briefly, and that perhaps defendant had used the bathroom, but that he returned before Barnes and Watson came back to the car.

The State then asked Reid about a statement he made to Wilson, presented Reid with the statement, and asked him whether it fairly reflected what he told Wilson on 7 July 1998. Reid responded that there were "one or two lines in there [he] did not agree to." The State then asked Reid, over objection,

> isn't it true that you told Detective Wilson that [defendant] got out and walked over to the car in the next stall and shot the person, then came back, and got back in the vehicle saying we needed to go?

Reid answered, "[n]o sir."

Later, the State called Detective Wilson to the stand. Before allowing Wilson to testify as to the statements made to him by Barnes and Reid on 7 July 1998, the trial court gave the following instruction to the jury:

> Members of the jury . . . this testimony is offered for purposes of corroboration or lack of corroboration of the prior testimony of Mr. Barnes and Mr. Reid. You may consider it for that purpose only.

Detective Wilson then proceeded to relate the statements made to him by Barnes and Reid in which both men implicated defendant in the shooting of the victim. Wilson further testified that based on their statements, he included defendant's photograph in a lineup from which the victim immediately picked out defendant as his assailant.

Both defendant and Watson testified on behalf of defendant. Watson testified that defendant was not in possession of a shotgun on 4 July 1998. Watson additionally testified that when he heard gunshots at the car wash, he and Barnes ran back to the car, where Reid and defendant were waiting.

Defendant testified that while Barnes and Watson used the pay phone at the car wash, he and Reid cleaned out their car, and then he used the restroom. Defendant then testified that when they heard gunshots he and Reid got in the car, then Barnes and Watson ran up

and got in the car, and the men drove off. Defendant denied that he was in possession of a shotgun on 4 July 1998, and denied robbing or shooting the victim.

On appeal, defendant contends that the trial court committed reversible error by allowing the State to impeach Barnes and Reid on a collateral matter with extrinsic evidence. We are not persuaded.

"Under certain circumstances a witness may be impeached by proof of prior conduct or statements which are inconsistent with the witness's testimony." *State v. Whitley*, 311 N.C. 656, 663, 319 S.E.2d 584, 589 (1984). Such statements are admissible under North Carolina Rule of Evidence 607 for the purpose of shedding light on a witness's credibility. *Id.* In *State v. Williams*, 322 N.C. 452, 368 S.E.2d 624 (1988), our Supreme Court set out the basic principle of this area of evidence:

> A witness may be cross-examined by confronting him with prior statements inconsistent with any part of his testimony, but where such questions concern matters collateral to the issues, the witness's answers on cross-examination are conclusive, and the party who draws out such answers will not be permitted to contradict them by other testimony.

*Id.* at 455, 368 S.E.2d at 626 (quoting *State v. Green*, 296 N.C. 183, 192, 250 S.E.2d 197, 203 (1978)). Thus, under *Williams*, "it is clear a prior inconsistent statement may not be used to impeach a witness if the questions concern matters which are only collateral to the central issues." *State v. Najewicz*, 112 N.C. App. 280, 288, 436 S.E.2d 132, 137 (1993); *State v. Hunt*, 324 N.C. 343, 378 S.E.2d 754 (1989); *State v. Jerrells*, 98 N.C. App. 318, 390 S.E.2d 722 (1990). What is sometimes unclear, however, is what is "material" and what is "collateral." *Najewiczi*, 112 N.C. App. at 289, 436 S.E.2d at 138. Generally speaking, "material facts involve those matters which are pertinent and material to the pending inquiry," while "collateral" matters are those which are irrelevant or immaterial to the issues before the court. *Whitley*, 311 N.C. at 663, 319 S.E.2d at 589; *Najewiczi*, 112 N.C. App. at 289, 436 S.E.2d at 138.

Here, defendant relies upon *State v. Williams, State v. Hunt* and *State v. Jerrells* to support his argument that Barnes and Reid were improperly impeached on collateral matters with extrinsic evidence. In each of the three cases relied upon by defendant our courts held

"that once a witness denies having made a prior statement, the State may not impeach that denial by introducing evidence of the prior statement." *State v. Wilson*, 135 N.C. App. 504, 507, 521 S.E.2d 263, 264-65 (1999); *State v. Minter*, 111 N.C. App. 40, 48-49, 432 S.E.2d 146, 151 (1993). The rationale behind these holdings is that "once the witness *denies* having made a prior inconsistent statement . . . the prior statement concerns only a *collateral matter, i.e.*, whether the statement was ever made." *Najewiczi*, 112 N.C. App. at 289, 436 S.E.2d at 138. Here, unlike the situations presented in *Williams, Hunt* and *Jerrells*, both Barnes and Reid admitted making statements to Wilson on 7 July. Accordingly, these cases are inapposite.

Where the witness admits having made the prior statement, impeachment by that statement has been held to be permissible. In *State v. Wilson*, 135 N.C. App. 504, 521 S.E.2d 263 (1999) two witnesses testified as to the events of the night of 22 February 1997 when defendant was involved in an assault. Both witnesses also admitted making statements to the police regarding the assault. Over defendant's objection, the State was permitted to examine these witnesses about their prior inconsistent statements to the police. *Id.* at 506, 521 S.E.2d at 264. On appeal we held that "[s]ince neither [witness] denied making the prior statements, their introduction was not collateral and therefore the trial court properly allowed the State to use these witnesses' prior statements for impeachment purposes." *Id.* at 507, 521 S.E.2d at 265.

Likewise, where there is testimony that a witness fails to remember having made certain parts of a prior statement, denies having made certain parts of a prior statement, or contends that certain parts of the prior statement are false, our courts have allowed the witness to be impeached with the prior inconsistent statement. In *State v. Whitley*, 311 N.C. 656, 319 S.E.2d 584 (1984) the witness testified that she did not remember making specific statements to the police which tended to inculpate defendant, and then denied having made those specific statements. Our Supreme Court held that because "the prior statement with which [the witness] was impeached was inconsistent in part with her testimony and material in that it related to events immediately leading to the shooting," the witness could be impeached concerning the inconsistencies in her prior statement. *Id.* at 663, 319 S.E.2d at 589. Moreover, in *State v. Minter*, 111 N.C. App. 40, 432 S.E.2d 146 (1993) where the witness denied making certain statements before the grand jury and also claimed that some statements he made to the grand jury were false,

we held it permissible for the State to impeach the witness with his prior inconsistent statements.

At trial both Barnes and Reid admitted making statements to Wilson in which they discussed details of the robbery and assault of the victim and implicated defendant. Barnes, however, testified that certain parts of his statement were inaccurate, and that he did not remember making certain parts of his statement. Reid also testified that certain parts of his statement were inaccurate. Thus, we conclude that under *Whitley*, *Wilson* and *Minter* the trial court did not err in allowing Barnes and Reid to be impeached concerning the inconsistencies in their prior statements.

Finally, we note that while North Carolina Rule of Evidence 607 allows a party to impeach its own witness on a material matter with a prior inconsistent statement, impeachment is impermissible where it is used as a mere subterfuge to get evidence before the jury which is otherwise inadmissible. *State v. Hunt*, 324 N.C. 343, 349, 378 S.E.2d 754, 757 (1989); *State v. Price*, 118 N.C. App. 212, 216, 454 S.E.2d 820, 822-23 (1995). "Circumstances indicating good faith and the absence of subterfuge . . . have included the facts that the witness's testimony was extensive and vital to the government's case . . . ; that the party calling the witness was genuinely surprised by his reversal . . . ; or that the trial court followed the introduction of the statement with an effective limiting instruction . . . ." *Hunt*, 324 N.C. at 350, 378 S.E.2d at 758 (citations omitted).

Here, the facts indicate "good faith and an absence of subterfuge." *Id.* at 350, 378 S.E.2d at 757. The testimony of Barnes and Reid was extensive and vital to the State's case. Both witnesses testified to the events of 4 July 1998 leading up to the robbery and assault of the victim. Both witnesses testified that they watched a fireworks display and attended a party, and later went "riding" in a Ford Escort. Both Barnes and Reid testified that they stopped at the car wash on Bessemer City Road to use the pay phone around 11:00 p.m., and that defendant was out of their sight for a sufficient time to have committed these crimes. Moreover, there is no indication that the State anticipated that Barnes and Reid would contradict the statements they had given to Wilson on 7 July. Finally, upon defendant's request, the trial court gave an effective limiting instruction to the jury before Wilson's testimony was elicited. Under the circumstances here, we cannot conclude that the impeachment of Barnes and Reid was "used as a mere subterfuge to get evidence before the jury which is otherwise inadmissible." *Id.* Accordingly, this assignment of error fails.

TERRELL v. TERMINIX SERVS., INC.

[142 N.C. App. 305 (2001)]

No error.

Judges HUDSON and SMITH concur.