STATE OF NORTH CAROLINA
v.
ROBBIE DANIEL SEARCY
No. COA05-614
North Carolina Court of Appeals
Filed February 7, 2006
This case not for publication
Rutherford County Nos. 04CRS2408-09.
Attorney General Roy A. Cooper, III, by Assistant Attorney General Belinda A. Smith, for the State.
Haakon Thorsen for defendant-appellant.
HUNTER, Judge.
Robbie Daniel Searcy ("defendant") appeals from his convictions of two counts of taking indecent liberties with a child. Defendant contends the trial court improperly allowed introduction of hearsay evidence, and further erred in denying his motion to dismiss the charges against him. We find no error by the trial court.
The State introduced evidence tending to show that the thirty-three-year-old defendant and his girlfriend ("Katy") played a game called "Truth or Dare" with a twelve-year-old child and a thirteen-year-old child they were babysitting. Under pressure from defendant and Katy, the children committed various sexual acts during the course of the game. Specifically, the children testified they licked Katy's vagina and breast and kissed both defendant and Katy on the lips. The children also watched as Katy manually stimulated defendant, and watched defendant put a condom on his erect penis. Defendant told the children not to tell anyone about the events of the evening. Further facts are set out in the opinion as necessary for an understanding of the assignments of error.
The jury found defendant guilty of two counts of indecent liberties with a child, and the trial court sentenced defendant to two consecutive sentences of sixteen to twenty months' imprisonment. Defendant appeals.
In his first three assignments of error, defendant argues the trial court erred in allowing the State to introduce a prior statement given by Katy to police officers for purposes of impeaching her testimony on the stand. During its case-in-chief, the State called Katy as a witness. Katy testified to the events of the evening leading up to the game of "Truth or Dare." Katy stated that the children requested to play the game, but that she and defendant refused. Katy denied that the sexual acts to which the children testified occurred. She stated she remembered giving a statement to police officers regarding the game and the sexual acts, but that she had been "forced" to give it. Katy did not explain what she meant by "forced." Over defendant's objection, the State then called the detective to whom Katy had made her earlier statement, and he testified regarding the substance of Katy's prior statement. Katy's prior statement generally corroborated the testimony given by the children concerning the events of the evening, including the sexual acts. The trial court instructed the jury that the statement was offered for purposes of impeachment.
Defendant's central objection to the introduction of Katy's statement is his allegation that her statement to the detective was "the product of coercion" and therefore inadmissible. Defendant presents no evidence to support his theory, however, beyond Katy's testimony at trial that she had been "forced" to give the statement. Katy never explained what she meant by "forced." Neither the State nor defendant questioned her as to what she meant, and there was no voir dire conducted on the subject. There was no other evidence of fear, coercion, or improper means employed by the detective taking her statement. Notably, Katy testified she remembered making the statement and its contents.
"Under certain circumstances a witness may be impeached by proof of prior conduct or statements which are inconsistent with the witness's testimony." State v. Whitley, 311 N.C. 656, 663, 319 S.E.2d 584, 589 (1984) (holding that, because the prior statement with which the witness was impeached was inconsistent in part with her testimony, and material in that it related to events immediately leading to the crime in the case, the trial court committed no error in allowing the introduction of her prior statement). "Inconsistent prior statements are admissible for the purpose of shedding light on a witness's credibility." Id.; see also N.C. Gen. Stat. § 8C-1, Rule 607 (2005) ("[t]he credibility ofa witness may be attacked by any party, including the party calling him"); State v. Riccard, 142 N.C. App. 298, 304, 542 S.E.2d 320, 323 (2001) (holding the trial court properly allowed introduction of prior statements given by witnesses for impeachment purposes).
Defendant cites the case of State v. Hunt, 324 N.C. 343, 378 S.E.2d 754 (1989), in support of his argument that the introduction of Katy's prior statement was error. In Hunt, a witness called by the State admitted she was a prostitute and that she was acquainted with the defendant. The State then questioned the witness regarding prior statements damaging to the defendant's case she allegedly made to police officers. The witness denied making the statements. When confronted with the signed statements on the stand during voir dire, the witness acknowledged that her signature appeared on the documents, but she denied knowledge or memory of the statements. She repeated her denial during testimony before the jury. Over the defendant's objections, the trial court subsequently allowed a police officer to testify as to the witness's prior statements for purposes of impeachment, corroboration, and as substantive evidence. Id. at 352, 378 S.E.2d at 759.
Upon review, our Supreme Court held that the trial court erred in permitting the police officer to testify as to the substance of the prior statements denied by the witness. The Court noted that "extrinsic evidence of prior inconsistent statements may not be used to impeach a witness where the questions concern matters collateral to the issues[,]" and explained that collateral matters"include testimony contradicting a witness's denial that he made a prior statement when that testimony purports to reiterate the substance of the statement." Id. at 348, 378 S.E.2d at 757. As the witness in Hunt had denied making the prior statements, the police officer could properly have been called to contradict the fact, denied by [the witness], that she had made the statement to him on the specified date. But . . . "it was improper to impeach [the witness concerning what she had or had not told the police officer] by offering the testimony of [the police officer]."
Id. at 348-49, 378 S.E.2d at 757 (quoting State v. Williams, 322 N.C. 452, 456, 368 S.E.2d 624, 626 (1988)). Thus, the Court in Hunt determined that the trial court improperly allowed introduction of extrinsic evidence of collateral matters.
The Hunt Court further held that the trial court also erred because the prior statements constituted impermissible hearsay evidence offered under the guise of impeachment: "Under the facts of this case, circumstances accompanying the introduction of [the witness's] prior unsworn statement[s] provide no assurance either that [her] testimony was critical to the state's case or that it was introduced altogether in good faith and followed by effective limiting instructions." Id. at 351, 378 S.E.2d at 758. Finally, the Court noted that, even if the witness's "testimony on the subject of the prior statements had not been collateral and the purposes of their introduction had not been suspect as subterfuge, the application of the safeguard test of Rule 403 would properly have excluded them[,]" in that the prejudicial effect of the evidence far outweighed its impeachment and corroborative value. Id. at 353, 378 S.E.2d at 760. The Court therefore granted the defendant a new trial.
The case of Hunt is distinctly different from the present case on several key grounds. First and most significantly, Katy did not deny making the prior statement. Unlike the statement of the witness in Hunt, Katy's statement was therefore not a collateral matter and could be used for impeachment purposes. See Riccard, 142 N.C. App. at 303, 542 S.E.2d at 323 (stating that, because the witnesses admitted making the prior statements in question, the statements were not collateral matters, and their introduction was permissible for purposes of impeachment). Second, there is no evidence here that the State was attempting to introduce otherwise impermissible hearsay evidence under the guise of impeachment. Unlike the witness in Hunt, Katy gave significant substantive evidence before the State confronted her regarding her prior inconsistent statement. There was no evidence of bad faith or subterfuge on the part of the State, and the trial court gave appropriate limiting instructions to the jury. Notably, the prior statement was introduced for purposes of impeachment only, and not, as in Hunt, for purposes of substantive evidence. Third, the prejudicial effect of the statement did not outweigh its impeachment value. Both of the children who testified were old enough to be reliable witnesses, and they gave detailed and substantial evidence against defendant. Katy's prior statement merely corroborated the testimony of the children, and itsadmission did not significantly prejudice defendant. We therefore find Hunt inapposite to the case sub judice.
Although defendant now contends Katy's statement was the product of coercion, he did not object to it as such. The basis of defendant's objection at trial was that the evidence could not be used for substantive purposes, and that even if it were admitted for purposes of impeachment, the jury might nevertheless use the statement as substantive evidence to satisfy the elements of the offense. It is well established that "where a theory argued on appeal was not raised before the trial court, 'the law does not permit parties to swap horses between courts in order to get a better mount in the [appellate court].'" State v. Sharpe, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996) (quoting Weil v. Herring, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)). According to Rule of Appellate Procedure 10(b)(1), in order to preserve a question for appellate review, the party must state the specific grounds for the ruling the party desires the court to make. N.C.R. App. P. 10(b)(1). Defendant argues that, to the extent he failed to properly preserve this argument, the Court should nevertheless find plain error. Plain error analysis requires, however, that "[w]e determine whether, absent the error, . . . the jury [would] have returned a different verdict." State v. Ewell, 168 N.C. App. 98, 102, 606 S.E.2d 914, 917, disc. review denied, 359 N.C. 412, 612 S.E.2d 326 (2005). We determined supra that the statement did not significantly prejudice defendant, given the substantial evidence against defendant and the relative insignificance of the priorstatement. We hold the trial court did not err in admitting Katy's prior statement for purposes of impeachment. Defendant's first three assignments of error are overruled.
By his final assignment of error, defendant states that "[t]he evidence was insufficient to convince a rational trier of fact." Defendant then offers a two-sentence factual summary of the basis of his motion to dismiss before the trial court, followed by a one-sentence general proposition of law. Defendant never applies this general proposition to the facts of this case, nor does he make any substantive argument regarding the grounds for his motion to dismiss. As such, defendant has waived this assignment of error. See N.C.R. App. P. 28(a) ("[q]uestions raised by assignments of error . . . but not then presented and discussed in a party's brief, are deemed abandoned"). Even if defendant had properly preserved this argument, there was substantial evidence to support his convictions. We dismiss this assignment of error.
In conclusion, we find no error by the trial court.
No error.
Judges McCULLOUGH and GEER concur.
Report per Rule 30(e).