**STATE v. AVENT**

[222 N.C. App. 147 (2012)]

STATE OF NORTH CAROLINA v. DEWAYNE AVENT, Defendant

No. COA11-1506

(Filed 7 August 2012)

**1. Indictment and Information—first-degree murder— motion to amend granted—date not an essential element of murder**

The trial court did not err in a first-degree murder case by granting the State's motion to amend the date of the indictment from December 28 to December 27. The date was not an essential element of murder and defendant failed to show surprise or prejudice when he presented his alibi defense for the correct date.

**2. Discovery—refusal to compel disclosure of confidential informant—failure to show necessity**

The trial court did not err in a first-degree murder case by refusing to compel disclosure of a confidential informant. Defendant did not make a sufficient showing that the particular circumstances of his case mandated disclosure of a confidential informant who merely provided defendant's phone number to law enforcement.

**3. Evidence—prior inconsistent statements—credibility— failure to show probative value outweighed unfair prejudice**

The trial court did not abuse its discretion in a first-degree murder case by allowing evidence of two witnesses' prior inconsistent statements. The trial court specifically instructed the jury not to consider the statements substantively, but only for purposes of determining their credibility. Defendant failed to demonstrate that the probative value of the statements was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

**4. Homicide—first-degree—sufficiency of evidence—premeditation and deliberation**

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree murder. Viewing the evidence in the light most favorable to the State, there was substantial evidence to support the jury's determination that defendant had committed a premeditated and deliberate act in shooting the victim.

Appeal by defendant from judgment entered on or about 4 May 2011 by Judge Walter H. Godwin, Jr. in Superior Court, Nash County. Heard in the Court of Appeals 24 May 2012.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Laura E. Parker, for the State.*

*Thomas R. Sallenger, for defendant-appellant.*

STROUD, Judge.

Defendant was convicted of first degree murder and appeals. For the following reasons, we find no error.

## I. Background

The State's evidence tended to show that around 5:00 p.m. on 27 December 2009, Ms. Jessie Lynch and her boyfriend, Mr. Tronyale Daniel, were riding in a vehicle in Rocky Mount. Mr. Daniel got out of the vehicle to speak with some people and defendant walked up and shot him. Later, Ms. Lynch identified defendant as the shooter to the police through photographs. Mr. Daniel died from "a gunshot wound to the chest." On or about 3 May 2010, defendant was indicted for first degree murder. After a trial by jury, defendant was found guilty of first degree murder and sentenced to life imprisonment without parole. Defendant appeals.

## II. Motion to Amend Indictment

**[1]** Defendant first contends that

the trial court erred when it granted the State's motion to amend the date of the indictment from December 28 to December 27 when time was of the essence where the defendant relied on an alibi defense and such error deprived the defendant of an opportunity to adequately present his defense[.]

(Original in all caps.) We review the trial court's granting of the State's motion to amend the indictment *de novo. State v. White*, 202 N.C. App. 524, 527, 689 S.E.2d 595, 596 (2010).

In *State v. Price*, our Supreme Court considered a similar argument as to an amendment to an indictment which also changed the date on the indictment. 310 N.C. 596, 598-600, 313 S.E.2d 556, 558-59 (1984). The Court determined that where time is not of the essence as to the offense charged, an amendment of the date on the indictment is not prohibited by N.C. Gen. Stat. § 15A-923(e) as this change does

"not substantially alter the charge set forth in the indictment." *Id.* at 599-600, 313 S.E.2d at 558-59 (quotation marks omitted). The Court noted that although N.C. Gen. Stat. § 15A-923(e)

> provides that [a] bill of indictment may not be amended[, t]his statute fails to include a definition of the word amendment. The North Carolina Court of Appeals has ruled upon the interpretation of this subsection in *State v. Carrington*, 35 N.C. App. 53, 240 S.E.2d 475, *cert. denied*, 294 N.C. 737, 244 S.E.2d 155 (1978). That court defined the term amendment to be any change in the indictment which would substantially alter the charge set forth in the indictment. We believe the Court of Appeals, in its diligent effort to avoid illogical consequences, correctly interpreted this statute's subsection.

> This change of the date of the offense, as permitted by the trial court, did not amount to an amendment prohibited by N.C. Gen. Stat. § 15A-923(e), because the change did not substantially alter the charge set forth in the indictment. The change merely related to time, which in this particular case was not an essential element of the charge.

> Generally, when time is not of the essence of the offense charged, an indictment may not be quashed for failure to allege the specific date on which the crime was committed . . .

> . . . .

> The State may prove that an offense charged was committed on some date other than the time named in the bill of indictment. Thus, pursuant to section 15-155, it was not necessary for the district attorney in the case *sub judice* to move to change the indictment date. Although not necessary, the correction was proper.

*Id.* at 598-99, 313 S.E.2d at 558-59 (citations, quotation marks, and ellipses omitted).

Here, the date of the murder was not an essential element of the charge and thus could be amended under N.C. Gen. Stat. § 15A-923(e). *See id.* at 598, 313 S.E.2d at 559. Defendant argues that because he raised an alibi defense, the date of the offense was essential to his defense. As the Court also noted in *Price*, "[a] variance as to time, however, becomes material and of the essence when it deprives a defendant of an opportunity to adequately present his defense." *Id.* at 599, 313 S.E.2d at 559. In *Price*, the defendant did not rely upon an

alibi defense nor did he contest his presence near the scene of the murder on the date of the crime. *Id.* The Court also noted that

> prior to his indictment for murder, defendant had been indicted for armed robbery of Miller's Grocery, which was the transaction out of which the fatal shooting of Milton Ferrell occurred. Defendant cannot claim surprise and resulting prejudice from the change of dates. In this case, the date on the indictment for murder, if erroneous, was not an essential element of the offense.

310 N.C. at 599, 313 S.E.2d at 559. Unlike the defendant in *Price*, defendant here did rely on an alibi defense. *See id.* We must therefore determine whether the change of the offense date "deprive[d] . . . defendant of an opportunity to adequately present his defense." *Id.*

During trial, defendant's alibi witness, Mr. Quincy Johnson, testified that he picked up defendant on 27 December 2009 at approximately 3:00 or 3:30 p.m in Rocky Mount. Mr. Johnson and defendant arrived in Tarboro around 4:00 p.m., and Mr. Johnson "waited until [defendant] was settled. . . . [They] smoked a little[,] and . . . [Mr. Johnson] waited until [defendant] was settled and got in the house. Until somebody came to the door and then [Mr. Johnson] had to leave to take [his] girl to work." The next morning, when Mr. Johnson came back to the house, defendant was still there in his pajamas. The State's evidence tended to show that Mr. Daniel was shot around 5:00 p.m. on 27 December 2009 in Rocky Mount. Thus, defendant presented his alibi defense and was not deprived "of an opportunity to adequately present his defense." *Id.*

Though defendant argues that "[a]s a result of the amendment granted by the trial [c]ourt, the [d]efendant was then faced at trial with defending himself on not one date but then two dates[,]" in actuality, the State amended the indictment to only the date of 27 December 2009. Thus, defendant only needed a defense for 27 December 2009, and he provided this through the testimony of Mr. Johnson. Defendant also contends that "only one witness for the defense was presented" but fails to make any arguments regarding what other witnesses he would have presented had the indictment not been amended. Furthermore, the State's evidence included two eyewitness statements and Mr. Daniel's autopsy report which all noted the date of the murder as 27 December 2009; defendant makes no argument that he was not aware of this evidence well before the date of trial. Accordingly, also as in *Price*, "[d]efendant cannot claim surprise and resulting prejudice from the change of dates." *Id.* at

599-600, 313 S.E.2d at 559. As the date is not an essential element for murder, and defendant has not shown surprise or prejudice but instead did present his alibi defense for the correct date, we find no error in the trial court's granting of the State's motion to amend the indictment. *See id.* at 598-600, 313 S.E.2d at 559. This argument is overruled.

### III. Motion to Compel

**[2]** Defendant next contends that

> the trial court erred in denying the defendant's motion to compel disclosure of the identity of a confidential informant utilized by law enforcement to identify the alleged cellular phone number location of the defendant on the grounds that the failure to do so violated North Carolina law, the defendant's right to due process as provided to him by the Fifth Amendment and the defendant's Sixth Amendment right to cross examine and confront the witnesses against him.

(Original in all caps.) "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C. Gen. Stat. § 15A-1443(b) (2009).

Defendant directs this Court's attention to *Roviaro v. United States*, 353 U.S. 53, 1 L.Ed. 2d 639 (1957) arguing for disclosure of the confidential informant. However, in *Roviaro*, the United States Supreme Court stated that

> no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

353 U.S. at 62, 1 L.Ed. 2d at 646. In interpreting *Roviaro* this Court has stated,

> The state is privileged to withhold from a defendant the identity of a confidential informant, with certain exceptions. *Roviaro v. United States*, 353 U.S. 53, 1 L.Ed. 2d 639 (1957), sets forth the applicable test when disclosure is requested. The trial court must

balance the government's need to protect an informant's identity (to promote disclosure of crimes) with the defendant's right to present his case. However, *before the courts should even begin the balancing of competing interests which Roviaro envisions, a defendant who requests that the identity of a confidential informant be revealed must make a sufficient showing that the particular circumstances of his case mandate such disclosure.*

Two factors weighing in favor of disclosure are (1) the informer was an actual participant in the crime compared to a mere informant, and (2) the state's evidence and defendant's evidence contradict on material facts that the informant could clarify. Factors which weigh against disclosure include whether the defendant admits culpability, offers no defense on the merits, or the evidence independent of the informer's testimony establishes the accused's guilt.

*State v. Dark,* 204 N.C. App. 591, 593, 694 S.E.2d 502, 504 (emphasis added) (citations, quotation marks, and brackets omitted), *disc. review denied,* 364 N.C. 327, 700 S.E.2d 928 (2010).

As to the two factors which would favor disclosure, defendant has shown neither. Defendant has neither shown nor even alleged that "the informer was an actual participant in the crime[.]" *Id.* Furthermore, the State's evidence and defendant's evidence do not appear to contradict as to any "material facts" save that the State claimed defendant was the shooter and defendant claimed he was not at the scene of the crime at the time in question, but defendant has not shown how the identity of the person who provided his phone number would be relevant to these facts. One of the three factors which may weigh against disclosure does exist, as "the evidence independent of the informer's testimony establishes the accused's guilt." *Id.* Ms. Lynch's eyewitness testimony that she saw defendant shoot Mr. Daniel "establishes the accused's guilt." *Id.* While we acknowledge that defendant did not "admit[] culpability" and has offered an alibi witness as a defense, we conclude that defendant has not "ma[d]e a sufficient showing that the particular circumstances of his case mandate . . . disclosure" of a confidential informant who merely provided defendant's phone number to law enforcement, and thus the trial court did not err by refusing to compel this disclosure. This argument is overruled.

## IV. Inconsistent Statements

**[3]** During defendant's trial, Mr. Xavier Hicks testified that he was at the scene of the crime but did not see defendant. The State then introduced a statement Mr. Hicks had written for the police the day after the incident which stated, "Then DeWayne came up smoking a cigarette and walked up to the dude in the black hoodie and said what are you trying to say, pulled out a handgun and shot the boy and ran[.]" Mr. Jamal Porter also testified that he was at the scene of the crime but did not see defendant. The State then introduced a statement Mr. Porter had written for the police the day after the incident which stated,

> [T]hat's when the victim was walking back towards his car and began to pass a few words with DeWayne and then the victim's girlfriend was telling the victim to come on let's go and then I seen the victim trying to smack the gun out of DeWayne's hand and that's when I heard the shot being fired.

Defendant argues

> the trial court erred by admitting the prior unsworn written inconsistent statements of witness Hicks and witness Porter into evidence and by publishing it to the jury where Hicks and Porter testified on the stand that each lied in that unsworn statement thereby allowing the State to impeach its own witness and allowing the State to get that statement into evidence and before the jury in violation of N.C.G.S. 8C-1, Rule 607[,]

and

> the trial court erred in allowing into evidence and by publishing to the jury prior written inconsistent statements of witness Hicks and witness Porter whose probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues and did mislead the jury in violation of N.C.G.S. 8C-1, Rule 403 of the Rules of Evidence.[1]

(Original in all caps.)

Our standard of review as to North Carolina Rules of Evidence 403 and 607 is abuse of discretion. *State v. Banks*, ____ N.C. App. ____, ____, 706 S.E.2d 807, 814 (2011).

---

1. In one of defendant's headings he also argues that "the due process clause of the Fifth Amendment of the United States Constitution" was violated. (Original in all caps.) However, defendant does not actually make any substantive constitutional arguments in his brief; therefore, we will address only defendant's arguments as to North Carolina Rules of Evidence 607 and 403. *See* N.C.R. App. P. 28(a).

Our review of the trial court's decision to admit or exclude evidence pursuant to N.C.R. Evid. 403 is for abuse of discretion. Rulings by the trial court concerning whether a party may attack the credibility of its own witness are reviewed for an abuse of discretion.

Similarly, our standard of review for rulings made by the trial court pursuant to Rule 607 of the North Carolina Rules of Evidence is abuse of discretion.

Abuse of discretion occurs where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.

*Id.* (citations and quotation marks omitted).

A. Rule 607

North Carolina Rule of Evidence 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling him." N.C. Gen. Stat. § 8C-1, Rule 607 (2009). In *State v. Riccard*, this Court thoroughly analyzed the applicability of Rule 607 in a situation similar to the one presented in this case:

On appeal, defendant contends that the trial court committed reversible error by allowing the State to impeach Barnes and Reid on a collateral matter with extrinsic evidence. We are not persuaded.

Under certain circumstances a witness may be impeached by proof of prior conduct or statements which are inconsistent with the witness's testimony. Such statements are admissible under North Carolina Rule of Evidence 607 for the purpose of shedding light on a witness's credibility. In *State v. Williams*, 322 N.C. 452, 368 S.E.2d 624 (1988), our Supreme Court set out the basic principle of this area of evidence:

A witness may be cross-examined by confronting him with prior statements inconsistent with any part of his testimony, but where such questions concern matters collateral to the issues, the witness's answers on cross-examination are conclusive, and the party who draws out such answers will not be permitted to contradict them by other testimony.

Thus, under *Williams*, it is clear a prior inconsistent statement may not be used to impeach a witness if the questions concern matters which are only collateral to the central issues. What is sometimes unclear, however, is what is material and what is col-

lateral. Generally speaking, material facts involve those matters which are pertinent and material to the pending inquiry, while collateral matters are those which are irrelevant or immaterial to the issues before the court.

Here, defendant relies upon *State v. Williams*, *State v. Hunt* and *State v. Jerrells* to support his argument that Barnes and Reid were improperly impeached on collateral matters with extrinsic evidence. In each of the three cases relied upon by defendant our courts held that once a witness denies having made a prior statement, the State may not impeach that denial by introducing evidence of the prior statement. The rationale behind these holdings is that once the witness denies having made a prior inconsistent statement the prior statement concerns only a collateral matter, *i.e.*, whether the statement was ever made. Here, unlike the situations presented in *Williams*, *Hunt* and *Jerrells*, both Barnes and Reid admitted making statements to Wilson on 7 July. Accordingly, these cases are inapposite.

*Where the witness admits having made the prior statement, impeachment by that statement has been held to be permissible.* In *State v. Wilson*, 135 N.C. App. 504, 521 S.E.2d 263 (1999) two witnesses testified as to the events of the night of 22 February 1997 when defendant was involved in an assault. Both witnesses also admitted making statements to the police regarding the assault. Over defendant's objection, the State was permitted to examine these witnesses about their prior inconsistent statements to the police. On appeal we held that since neither witness denied making the prior statements, their introduction was not collateral and therefore the trial court properly allowed the State to use these witnesses' prior statements for impeachment purposes.

Likewise, where there is testimony that a witness fails to remember having made certain parts of a prior statement, denies having made certain parts of a prior statement, or contends that certain parts of the prior statement are false, our courts have allowed the witness to be impeached with the prior inconsistent statement. In *State v. Whitley*, 311 N.C. 656, 319 S.E.2d 584 (1984) the witness testified that she did not remember making specific statements to the police which tended to inculpate defendant, and then denied having made those specific statements. Our Supreme Court held that because the prior statement with which the witness was impeached was inconsistent in part with her testimony and material in that it related to events immediately lead-

ing to the shooting, the witness could be impeached concerning the inconsistencies in her prior statement. Moreover, in *State v. Minter*, 111 N.C. App. 40, 432 S.E.2d 146 (1993) where the witness denied making certain statements before the grand jury and also claimed that some statements he made to the grand jury were false, we held it permissible for the State to impeach the witness with his prior inconsistent statements.

At trial both Barnes and Reid admitted making statements to Wilson in which they discussed details of the robbery and assault of the victim and implicated defendant. Barnes, however, testified that certain parts of his statement were inaccurate, and that he did not remember making certain parts of his statement. Reid also testified that certain parts of his statement were inaccurate. Thus, we conclude that under *Whitley*, *Wilson* and *Minter* the trial court did not err in allowing Barnes and Reid to be impeached concerning the inconsistencies in their prior statements.

Finally, we note that while North Carolina Rule of Evidence 607 allows a party to impeach its own witness on a material matter with a prior inconsistent statement, impeachment is impermissible where it is used as a mere subterfuge to get evidence before the jury which is otherwise inadmissible. Circumstances indicating good faith and the absence of subterfuge have included the facts that the witness's testimony was extensive and vital to the government's case; that the party calling the witness was genuinely surprised by his reversal; or that the trial court followed the introduction of the statement with an effective limiting instruction.

Here, the facts indicate good faith and an absence of subterfuge. The testimony of Barnes and Reid was extensive and vital to the State's case. Both witnesses testified to the events of 4 July 1998 leading up to the robbery and assault of the victim. Both witnesses testified that they watched a fireworks display and attended a party, and later went riding in a Ford Escort. Both Barnes and Reid testified that they stopped at the car wash on Bessemer City Road to use the pay phone around 11:00 p.m., and that defendant was out of their sight for a sufficient time to have committed these crimes. Moreover, there is no indication that the State anticipated that Barnes and Reid would contradict the statements they had given to Wilson on 7 July. Finally, upon defendant's request, the trial court gave an effective limiting instruction to the jury before Wilson's testimony was elicited. Under the cir-

cumstances here, we cannot conclude that the impeachment of Barnes and Reid was used as a mere subterfuge to get evidence before the jury which is otherwise inadmissible. Accordingly, this assignment of error fails.

142 N.C. App. 298, 302-04, 542 S.E.2d 320, 322-24 (emphasis added) (citations, quotation marks, ellipses, and brackets omitted), *cert. denied*, 353 N.C. 530, 549 S.E.2d 864 (2001).

During defendant's trial, Mr. Hicks testified that he did not see defendant at the scene of the crime. The State presented Mr. Hicks with his 28 December 2009 written statement he had provided to the police, and Mr. Hicks acknowledged that it was his statement but claimed it was a "lie." Mr. Hicks statement said that defendant "walked up to the dude in the black hoodie and said what are you trying to say, pulled out a handgun and shot the boy and ran[.]" Mr. Porter testified that he did not see defendant at the scene of the crime. The State presented Mr. Porter with his 28 December 2009 written statement he had provided to the police, and Mr. Porter acknowledged it was his statement and said "I didn't really write a lie, but that's -- that's what [the police] wanted me to put, yeah." Mr. Porter's statement provided that "the victim [tried] to smack the gun out of [defendant's] hand and that's when I heard the shot being fired." Thus, both witnesses admitted having made prior statements to the police, and those statements differed greatly from their trial testimony.

First, both Mr. Hicks' and Mr. Porter's statements to the police were material as the statements are concerning the credibility of two individuals who claimed they did not see defendant at the scene of the crime. *See id.* at 302, 542 S.E.2d at 322-23. Both Mr. Hicks' and Mr. Porter's testimonies were certainly regarding "facts involv[ing] those matters which are pertinent and material to the pending inquiry[.]" *Id.* at 302 542 S.E.2d at 323. Second, as both witnesses admitted having made the prior statements "impeachment by th[ose] statement[s] has been held to be permissible." *Id.* at 303, 542 S.E.2d at 323. Third, we do not believe "mere subterfuge" took place on the part of the State: the credibility of the eyewitnesses' testimony was certainly "vital to the government's case[;]" although defendant contends "the State knew that witness Hicks and witness Porter were going to testify that any previous statement given by each was not the truth[,]" defendant has not directed this Court's attention to any indication in the record that the State was not "genuinely surprised" by the witnesses' denial of portion of their statements at trial; lastly, the trial court also "fol-

lowed the introduction of the statement[s] with an effective limiting instruction." *Id.* at 304, 542 S.E.d at 324. Accordingly, we conclude that the trial court did not abuse its discretion in allowing evidence of the witnesses' prior inconsistent statements.

B. Rule 403

Defendant also argues that even if the witnesses' prior inconsistent statements were admissible under Rule 607, they should have been excluded under Rule 403 as their "probative value [was] substantially outweighed by the danger of unfair prejudice, confusion of the issues and did mislead the jury[.]" (Original in all caps.) North Carolina Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" N.C. Gen. Stat. § 8C-1, Rule 403 (2009).

Before Mr. Hicks' statement was read to the jury the trial court stated,

> Ladies and gentlemen, I would like for y'all to listen to me and I want you to listen to me carefully. When evidence has been received tending to show that at an earlier time a witness made a statement which may be consistent or may conflict with his testimony at this trial, you must not consider such earlier statement as evidence of the truth of what was said at the earlier time because it was not made under oath at this trial. If you believe that such earlier statement was made and that it is consistent or does conflict with the testimony of the witness at this trial, then you may consider this together with all other facts and circumstances bearing on the witness's truthfulness in deciding whether or not to believe or disbelieve the witness's testimony at this trial.

The trial court also gave a similar instruction before Mr. Porter's statement was read to the jury. Due to the instruction provided by the trial court which specifically instructed the jury not to consider Mr. Hicks' or Mr. Porter's prior inconsistent statements substantively but only for purposes of determining their credibility, defendant has not demonstrated that the "probative value [of the statements was] . . . substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" *Id.* This argument is overruled.

## V. Motion to Dismiss

**[4]** Lastly, defendant contends that

the trial court erred in denying the defendant's motion to dismiss the charge of first degree murder when the evidence viewed in the light most favorable to the State was insufficient to permit a reasonable juror to find beyond a reasonable doubt that the defendant committed premeditated and deliberate murder.

(Original in all caps.)

The standard of review for a motion to dismiss is well known. A defendant's motion to dismiss should be denied if there is substantial evidence of: (1) each essential element of the offense charged, and (2) of defendant's being the perpetrator of the charged offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. The Court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve.

*State v. Johnson*, 203 N.C. App. 718, 724, 693 S.E.2d 145, 148 (2010) (citations and quotation marks omitted). "The elements of first-degree murder are: (1) the unlawful killing, (2) of another human being, (3) with malice, and (4) with premeditation and deliberation." *State v. Coble*, 351 N.C. 448, 449, 527 S.E.2d 45, 46 (2000).

Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation. Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation. Premeditation and deliberation can be inferred from many circumstances, some of which include:

(1) absence of provocation on the part of deceased, (2) the statements and conduct of the defendant before and after the killing, (3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill will or previous difficulties between the parties, (5) the dealing of lethal blows after the deceased

has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds.

*State v. Wiggins*, ____ N.C. App. ____, ____, 707 S.E.2d 664, 673 (citations and quotation marks omitted), *disc. review denied*, 365 N.C. 189, 707 S.E.2d 242 (2011). The evidence does not demonstrate any "provocation on the part of" Mr. Daniel, and Ms. Lynch testified that defendant simply walked up to Mr. Daniel, shot him, and then ran. *See id.* Viewing "the evidence in the light most favorable to the State[,]" there was substantial evidence to support the jury's determination that defendant had committed a premeditated and deliberate act in shooting Mr. Daniel. *Johnson* at 724, 693 S.E.2d at 148; *see Wiggins*, ____ N.C. App. at ____, 707 S.E.2d at 673.

## VI. Conclusion

For the foregoing reasons, we find no error.

NO ERROR.

Judges CALABRIA and McCULLOUGH concur.