NO. COA13-998

NORTH CAROLINA COURT OF APPEALS

Filed: 18 February 2014

STATE OF NORTH CAROLINA

v.

HAROLD GOINS, JR.

New Hanover County
Nos. 10 CRS 57633, 10 CRS 57604-05, 11 CRS 2152

Appeal by Defendant from judgments entered 11 April 2013 by Judge Arnold O. Jones, II in Superior Court, New Hanover County. Heard in the Court of Appeals 21 January 2014.

*Attorney General Roy Cooper, by Special Deputy Attorney General K.D. Sturgis, for the State.*

*Ryan McKaig for Defendant.*

McGEE, Judge.

Harold Goins, Jr. ("Defendant") appeals from his convictions for first-degree rape, first-degree kidnapping, three counts of first-degree sexual offense, assault with a deadly weapon, communicating threats, and being a violent habitual felon. At trial, the State's witnesses included Johnathan Stevens ("Mr. Stevens"), who testified that he drove Defendant to the apartment of Jacquelyn Goins ("Ms. Goins") on 21 July 2010. Ms. Goins testified that Defendant is her cousin

and that Defendant came to her apartment with his brother, Mr. Stevens. She testified that Mr. Stevens left the apartment after about twenty minutes, and Defendant subsequently attacked her. The facts relevant to the issues on appeal are discussed in greater detail in the analysis section of this opinion.

## I. Speedy Trial

Defendant first argues the trial court "abused its discretion when it denied [Defendant's] motion to dismiss for lack of a speedy trial." To determine whether a defendant's right to a speedy trial has been infringed, we consider four factors: "(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant resulting from the delay." *State v. McBride*, 187 N.C. App. 496, 498, 653 S.E.2d 218, 220 (2007); *see also Barker v. Wingo*, 407 U.S. 514, 530, 33 L. Ed. 2d 101, 117 (1972).

## A. Length of Delay

For speedy trial analysis, the relevant period of delay begins at indictment. *State v. Friend*, ___ N.C. App. ___, ___, 724 S.E.2d 85, 90, *disc. review denied*, 366 N.C. 402, 735 S.E.2d 188 (2012). In the present case, the relevant period began 18 January 2011 and ended upon Defendant's trial, on 1 April 2013. Thus, the relevant period for the first *Barker* factor is

approximately twenty-seven months, from 18 January 2011 to 1 April 2013.

### B. Reason for the Delay

As to the reason for the delay, Defendant bears the burden of "offering *prima facie* evidence showing that the delay was caused by the neglect or willfulness of the prosecution[.]" *State v. Washington*, 192 N.C. App. 277, 283, 665 S.E.2d 799, 804 (2008). Only after the defendant has carried his burden "must the State offer evidence fully explaining the reasons for the delay and sufficient to rebut the *prima facie* evidence." *Id.* The "constitutional guarantee does not outlaw good-faith delays which are reasonably necessary for the State to prepare and present its case." *Id.*

Defendant failed to carry this burden. In his brief to this Court, Defendant concedes there is no "deliberate delay in an attempt to hamper the defense" by the State. In his motion for a speedy trial, Defendant offered no evidence showing that the State's neglect or willfulness caused a delay. Furthermore, in arguing to the trial court that the charges should be dismissed for speedy trial violations, defense counsel alleged merely that "the defense has never, to my knowledge, made a motion to continue, joined in any motion to continue, asked for any continuance or delay for this trial." Defendant made no

allegations as to neglect or willfulness of the State.

Nevertheless, the State offered reasons to explain the delay. Defendant contends the State's reasons — a backlog at the State Bureau of Investigation ("SBI") crime lab, the SBI's failure to fully analyze the rape kit, other cases on the docket, the need to have an out-of-county judge, and Defendant's motion for a change of venue — "were entirely caused by or under the control of the [S]tate to rectify."

In *State v. Tann*, 302 N.C. 89, 93, 273 S.E.2d 720, 723 (1981), a speedy trial case, the defendant moved for an examination to determine competency. Further delay resulted when defense counsel withdrew. The case was calendared for trial "one or more times" but not reached due to the length of the calendar. *Id.* at 95, 273 S.E.2d at 724. Our Supreme Court held that "[a]ll such reasons have been recognized consistently as valid justification for delay." *Id.* "Inherent in every criminal prosecution is the probability of some delay . . . and for that reason the right to a speedy trial is necessarily relative." *Id.* at 94, 273 S.E.2d at 724.

As in *Tann*, there is no indication in the present case that the State either negligently or purposefully underutilized court resources. Accordingly, we conclude the delay was caused by neutral factors. Defendant failed to carry his burden to show

that delay was caused by the State's neglect or willfulness. This factor weighs against Defendant's speedy trial claim.

### C. Assertion of the Right to a Speedy Trial

Defendant asserted his right to a speedy trial in November 2011. "Defendant's failure to assert his right to a speedy trial, or his failure to assert his right sooner in the process, does not foreclose his speedy trial claim, but does weigh against his contention[.]" *State v. Grooms*, 353 N.C. 50, 63, 540 S.E.2d 713, 722 (2000). In *Grooms*, the defendant's assertion came three years after indictment. *Id.* This Court held that his delay in asserting the speedy trial right weighed against his claim. *Id.* In the present case, Defendant's assertion came nearly a year after the indictments, which are dated 18 January 2011. Given the relative speed with which he asserted the right, this factor tends to weigh in favor of Defendant's claim.

### D. Prejudice

The "defendant must show actual, substantial prejudice." *State v. Spivey*, 357 N.C. 114, 122, 579 S.E.2d 251, 257 (2003). "The right to a speedy trial is designed: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *State v. Lee*, ___ N.C. App. ___,

___, 720 S.E.2d 884, 893, *disc. review improvidently allowed*, 366 N.C. 329, 734 S.E.2d 371 (2012) (quoting *State v. Webster*, 337 N.C. 674, 680-81, 447 S.E.2d 349, 352 (1994)).

In the present case, Defendant argues he suffered "oppressive" pre-trial incarceration in federal prison because he was "labeled a sex offender by the United States Bureau of Prisons," causing him anxiety and concern. However, as Defendant acknowledges, he was a federal inmate before the trial at issue in this case.

Defendant next argues his appointed attorney "left the case," and Defendant "had an attorney who was forced to play catch-up." However, Defendant does not indicate how his second attorney was deficient and how that deficiency prejudiced him. Similarly, in *Webster*, the defendant "appears to concede that there has been no actual impairment of her ability to defend caused by the delay in trial." *Webster*, 337 N.C. at 681, 447 S.E.2d at 352.

Defendant also contends there were "potential defense witnesses who were originally ready and willing to testify" who "became reticent." In *Lee*, the defendant argued his defense was impaired because an eyewitness to the incident became unavailable. *Lee*, ___ N.C. App. at ___, 720 S.E.2d at 893. The defendant did not state what evidence he might have obtained.

*Id.* This Court held the defendant failed to show "any actual or substantial prejudice resulting from the delay." *Lee*, ___ N.C. App. at ___, 720 S.E.2d at 893.

In the present case, Defendant does not explain how the delay caused reticence or what evidence Defendant would have elicited had the witnesses testified. Finally, Defendant notes that "the victim's story kept changing between the accusation, indictment and trial." Defendant does not explain how the delay caused the victim's story to change or how a changing story impaired Defendant's defense. Because Defendant has not shown actual, substantial prejudice, this factor weighs against his claim.

### E. Balancing of the *Barker* Factors

Our Courts have described a one-year trial delay as "presumptively prejudicial." *Webster,* 337 N.C. at 678, 447 S.E.2d at 351 (quoting *Doggett v. United States*, 505 U.S. 647, 652, 120 L. Ed. 2d 520, 528 (1992)). However, where the other factors weigh against a defendant's claim, our Courts have found no violation of the right to a speedy trial in a delay of three years and seven months. *McBride*, 187 N.C. App. at 498-99, 653 S.E.2d at 220. The four *Barker* factors must be balanced against one another. "No single factor is regarded as either a necessary or sufficient condition to the finding of a

deprivation of the right to a speedy trial." *Id.* at 498, 653 S.E.2d at 220.

In the present case, balancing the *Barker* factors reveals Defendant's right to a speedy trial was not violated. Although the length of delay was greater than one year, Defendant's failure to show neglect or willfulness of the State and failure to argue how his defense was prejudiced weigh heavily against his claim. We conclude Defendant's right to a speedy trial was not violated.

## II. Allowing the State to Impeach Its Own Witness

Defendant next argues the trial court erred "by allowing the State to impeach the credibility of its own witness[,]" Mr. Stevens, because the trial court allowed the State to "mask impermissible hearsay as impeachment evidence." We disagree.

## A. Standard of Review

"Rulings by the trial court concerning whether a party may attack the credibility of its own witness are reviewed for an abuse of discretion." *State v. Banks*, 210 N.C. App. 30, 37, 706 S.E.2d 807, 814 (2011). "Abuse of discretion occurs where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.* at 38, 706 S.E.2d at 814.

## B. Analysis

"The credibility of a witness may be attacked by any party, including the party calling him." N.C. Gen. Stat. § 8C-1, Rule 607 (2013). "[W]hile North Carolina Rule of Evidence 607 allows a party to impeach its own witness on a material matter with a prior inconsistent statement, impeachment is impermissible where it is used as a mere subterfuge to get evidence before the jury which is otherwise inadmissible." *State v. Riccard*, 142 N.C. App. 298, 304, 542 S.E.2d 320, 324 (2001) (citing *State v. Hunt*, 324 N.C. 343, 349, 378 S.E.2d 754, 757 (1989)).

"Although unsworn prior statements are not hearsay when not offered for their truth, the difficulty with which a jury distinguishes between impeachment and substantive evidence and the danger of confusion that results has been widely recognized." *Hunt*, 324 N.C. at 349, 378 S.E.2d at 757.

> Circumstances indicating good faith and the absence of subterfuge . . . have included the facts that the witness's testimony was extensive and vital to the government's case . . . ; that the party calling the witness was genuinely surprised by his reversal . . . ; or that the trial court followed the introduction of the statement with an effective limiting instruction. . . .

*Riccard*, 142 N.C. App. at 304, 542 S.E.2d at 324 (alterations in original). Our Supreme Court in *Hunt* analyzed the State's introduction of impeachment evidence to determine if the

witness's testimony either "was critical to the state's case or that it was introduced altogether in good faith and followed by effective limiting instructions." *Hunt*, 324 N.C. at 351, 378 S.E.2d at 758.

In the case before us, the State asked Mr. Stevens on direct examination about his interview with detectives. Mr. Stevens testified that he remembered the interview, but that looking at the video recording of the interview would not refresh his recollection of what he told the detectives. The State asked the trial court for permission to treat Mr. Stevens as a hostile witness and to play a video recording of the interview. The State had a video recording that had been redacted to remove information regarding Defendant "being in prison, the amount of time he spent in prison[,]" and various rumors.

Defendant objected to the introduction of the recording, citing *Hunt*, *supra*. The prosecutor contended that he met with Mr. Stevens before trial and asked him if he remembered speaking with detectives in 2010 and that Mr. Stevens responded affirmatively. The prosecutor also said that he read portions of the interview to Mr. Stevens and that Mr. Stevens had no questions. The prosecutor then stated:

> [Mr. Stevens] didn't express to me that he was going to refuse to testify. He didn't

> express any interest to me that he was not going to cooperate. There was no indication of anything -- what he said on the stand today, that he wanted to take the Fifth, that he didn't want to testify, that he didn't want to answer questions, that he didn't remember talking to the cops, he didn't remember the specific questions, or that he was so intoxicated. . . . None of that came up in the short conversation that I had with him.

We need not decide whether the record shows the State was genuinely surprised by Mr. Stevens' reversal because the testimony was critical to the State's case. Mr. Stevens testified that Defendant is his brother; that he met Ms. Goins when he drove Defendant and dropped him off at Ms. Goins' apartment; that he went into her apartment, observed her there alone, and stayed for about five minutes before returning home; that he left Defendant and Ms. Goins alone at her apartment; and that he returned "[a]bout two or three hours" later to pick up Defendant because he got a phone call from Ms. Goins. Mr. Stevens' testimony was critical to the State's case because Mr. Stevens had the best opportunity to observe Defendant's demeanor and hear his statements just before and just after the alleged offenses.

By contrast, in *Hunt*, the witness's testimony "consisted entirely of responding to challenges to her credibility and bias[,]" except for "brief testimony about the color of her

bicycle, which another of the state's witnesses thought he had seen [the] defendant riding[.]" *Hunt*, 324 N.C. at 351, 378 S.E.2d at 758. In the present case, the record indicates impeachment was permissible because Mr. Stevens' testimony was vital to the State's case.

Furthermore, the trial court both preceded and followed the introduction of the recording with a limiting instruction. As discussed in *Hunt*, the use of an effective limiting instruction weighs against the claim that the State's witness was impermissibly impeached. *Hunt*, 324 N.C. at 349, 378 S.E.2d at 758. Because the record indicates that Mr. Stevens' testimony was vital to the State's case and the trial court gave an effective limiting instruction, the trial court did not err in allowing the State to impeach its own witness.

## III. Evidence of Defendant's Recent Incarceration

Defendant next argues the trial court erred in admitting evidence that Defendant "had very recently been incarcerated[.]" Defendant contends the admission of evidence of Defendant's recent incarceration violated N.C. Gen. Stat. § 8C-1, Rule 404(b) (2013).

Although Defendant alleges that the "transcript is replete with references to [Defendant's] recent incarceration," the only reference Defendant pinpoints in his brief is page 447 of the

trial transcript.  The testimony relevant to this issue is as follows:

> [The State].  [W]hy did you -- why did you start writing [Defendant] letters at the age of 18?
>
> [Ms. Goins].  My brother, the one that's incarcerated, asked me to.
>
> [The State].  And if you know, where was [D]efendant when you wrote him these letters?
>
> [Ms. Goins].  Incarcerated.
>
>> [Defense Counsel].  Your Honor, I'm sorry.  At this point I would renew my prior objections that we argued based on due process, under Article 1, Section 23 of the North Carolina Constitution.
>>
>> The Court: Overruled.
>
> [The State].  Where was [D]efendant?  Where did you send these letters to?
>
> [Ms. Goins].  To the incarceration where he was.
>
> Q. Was he in jail, prison?
>
> A. In prison.
>
>> [Defense Counsel].  I'm sorry, Your Honor, I would note that, that is a standing objection to this line of questioning.
>>
>> The Court: Okay, standing objection. It's overruled.

The subsequent examination reveals no details identifying or

describing the conviction or convictions that led to Defendant's incarceration.

Rule 404(b) governs the admission of evidence "of other crimes, wrongs, or acts[.]" N.C.G.S. § 8C-1, Rule 404(b). Defendant cites *State v. McClain*, 240 N.C. 171, 81 S.E.2d 364 (1954), for support of his argument. In *McClain*, our Supreme Court noted that "[p]roof that a defendant has been guilty of another crime equally heinous prompts to a ready acceptance of and belief in the prosecution's theory that he is guilty of the crime charged." *Id.* at 174, 81 S.E.2d at 366.

However, in the present case, the State introduced no evidence of other crimes, wrongs, or acts. Rather, the State elicited testimony from Ms. Goins regarding why she corresponded via postal mail with Defendant. Defendant offers no case holding that discussing merely the fact of recent incarceration amounts to evidence of other crimes, wrongs, or acts. Furthermore, our research reveals no case holding that recent incarceration, in and of itself, amounts to evidence of other crimes, wrongs, or acts. Defendant therefore has not shown that the trial court erred on the basis of violation of N.C.G.S. § 8C-1, Rule 404(b).

## IV. State's Closing Remarks

Defendant next argues the trial court erred in allowing the

State to "comment on [Defendant's] invocation of his right to remain silent[.]"  We disagree.

"A criminal defendant cannot be compelled to testify, and any reference by the State regarding his failure to do so violates an accused's constitutional right to remain silent." *State v. Reid*, 334 N.C. 551, 554, 434 S.E.2d 193, 196 (1993). However, in the present case, the State did not refer to Defendant's failure to testify.  The relevant part of the State's closing is as follows:

> [The State]. And again, [D]efendant doesn't have to testify.  He has the right to remain silent, you can't hold that against him, and the judge is going to instruct you on that, and you know that already.  But again, kind of like earlier this week when I got up and told you, if their defense was these two judgments don't belong to [D]efendant, they could have presented --
>
> [Defense Counsel]. Objection, your Honor.
>
> The Court: Overruled.
>
> [The State]. You have heard no evidence contrary to the fact that this is [D]efendant, and both of these judgments are [D]efendant.

"The prosecution may comment on a defendant's failure to produce witnesses or exculpatory evidence to contradict or refute evidence presented by the State."  *Id.* at 555, 434 S.E.2d at 196.  As shown above, the State actually noted Defendant's

right to remain silent, rather than highlighting Defendant's failure to testify. Furthermore, the State commented on the failure to present evidence that the two prior judgments relevant to Defendant's violent habitual felon status did not belong to Defendant, which is permissible under *Reid*. The trial court did not err in allowing the State's comment.

No error.

Judges HUNTER, Robert C. and ELMORE concur.