STATE v. HOWARD

[133 N.C. App. 614 (1999)]

---

STATE OF NORTH CAROLINA v. ADRIAN BRUCE HOWARD

STATE OF NORTH CAROLINA v. DONNIE COATS LEE

No. COA98-951

(Filed 15 June 1999)

## Jury— selection—prejudicial statements—entire panel not dismissed—peremptory challenges not fully restored

There was prejudicial error in a prosecution for multiple offenses arising from a home invasion where 5 jurors were seated; a prospective juror stated that she knew one defendant from having been a Durham County detention officer and that another defendant looked familiar; that prospective juror was dismissed; nine jurors were selected by the end of the day; and a defense counsel brought to the attention of the court his concern over the statements. After an extended discussion, the court concluded that the jury was tainted, excused eight of the jurors but retained the ninth, who became the foreman, and restored only some of the peremptory challenges. When inappropriate answers are given or comments made by a prospective juror during the jury selection process, the trial court should make an inquiry of all jurors, both accepted and prospective, to determine whether they heard the statements, the effect of the statements on them, and whether they could disabuse their minds of the harmful effects of the comments. Morever, the trial court here ordered that counsel for the three defendants not consult with one another in the courtroom during the jury selection process;

although not assigned as error, such an order should be used only if necessary to maintain courtroom order during the proceedings and a record should be made of the reasons for the implementation of such a procedure.

Appeal by defendant Adrian Bruce Howard from judgments entered 17 November 1997 by Judge Henry V. Barnette in Durham County Superior Court, and by defendant Donnie Coats Lee from judgments entered 20 November 1997 by Judge Henry V. Barnette in Durham County Superior Court. Heard in the Court of Appeals 17 May 1999.

On 13 June 1996, the home of Joe McGhee in Durham was invaded by three armed men. The invaders robbed, threatened, and assaulted many of the guests in the home. Adrian Bruce Howard (defendant Howard), Donnie Coats Lee (defendant Lee), and Abdul Rashid (defendant Rashid) were indicted on numerous charges arising out of the incident. Each of the defendants was charged with two counts of assault with a deadly weapon with intent to kill inflicting serious injury; two counts of first-degree sexual offense; first-degree burglary; robbery with a dangerous weapon; second-degree kidnapping; and first-degree kidnaping. Defendant Howard was also charged with being an habitual felon. All three defendants were jointly tried at the 27 October 1997 Regular Criminal Session of Durham County Superior Court.

The parties accepted and seated five jurors during the first day of jury selection. During the morning of the second day of jury selection, a prospective juror, Ms. Mills, stated that she had been a Durham County detention officer and that she knew defendant Howard "from there." Ms. Mills also stated that defendant Lee looked familiar. She was later excused by counsel for defendant Rashid. At the end of the second day of jury selection, nine jurors had been selected. Counsel for defendant Howard then brought to the attention of the trial court his concern over the statements made by Ms. Mills in the presence of the other members of the jury panel.

When the trial reconvened the following morning, counsel and the trial court engaged in an extended colloquy over whether the jury was tainted by the statements of Ms. Mills, and what the remedy should be. The trial court concluded that the jury was tainted and that the affected jurors should be dismissed, and some of their peremptory challenges restored to defendants. Defendants moved

that all nine seated jurors be dismissed, and that the jury selection process begin all over. The trial court declined to do so, dismissed the first eight jurors, restored some of their peremptory challenges to defendants, and retained the ninth juror, Mr. Burrage. Mr. Burrage later became the jury foreman. Defendants objected to the trial court's procedure.

A jury was eventually seated. Defendant Rashid was acquitted of all charges, but defendants Howard and Lee were convicted on all charges, although the two assault charges against defendant Lee were reduced to assault with a deadly weapon with intent to kill, and one of the assault charges against defendant Howard was reduced to assault with a deadly weapon with intent to kill. Defendant Lee was sentenced to a minimum of 912 months and a maximum of 1,160 months. Defendant Howard was sentenced to a minimum of 1,021 months and a maximum of 1,291 months. The State elected not to proceed on the habitual felon charge against defendant Howard. Defendants Howard and Lee appealed, assigning errors.

*Attorney General Michael F. Easley, by Associate Attorney General Thomas J. Pitman, for the State.*

*Mark J. Simeon for defendant-appellant Adrian Bruce Howard.*

*Mark E. Edwards; and William C. Fleming, Jr., for defendant-appellant Donnie Coats Lee.*

HORTON, Judge.

The issue before us is whether the trial court erred in failing to dismiss the entire jury panel, restore all peremptory challenges to defendants, and begin the process of jury selection from the beginning when statements prejudicial to some or all of defendants were made in the presence of the seated jurors by a prospective member of the panel. We hold that the procedure followed by the trial court in this case was prejudicially erroneous to defendants, and grant them a new trial.

Our decision in *State v. Mobley*, 86 N.C. App. 528, 358 S.E.2d 689 (1987), sets out the preferred procedure for the trial court to follow when a prospective juror answers a question with information obviously prejudicial to a criminal defendant. In *Mobley*, a prospective juror stated that he was a police officer, and that he "had dealings with the defendant on similar charges." *Id.* at 532, 358 S.E.2d at 691. The trial court then excused the juror for cause, and instructed the

jury to strike from their minds any reference the prospective juror made to defendant. *Id.* at 533, 358 S.E.2d at 691. Defense counsel moved that the trial court dismiss the jurors based on the statement, and the trial court denied the motion to dismiss. *Id.* at 533, 358 S.E.2d at 691-92. On appeal, this Court held that:

> A statement by a police officer-juror that he knows the defendant from "similar charges" is likely to have a substantial effect on other jurors. The potential prejudice to the defendant is obvious. On the defendant's motion to dismiss the other jurors, the trial court, at the least, should have made inquiry of the other jurors as to the effect of the statement. *The more prudent option for the trial court would have been to dismiss the jurors who heard the statement and start over with jury selection.* In any event, the attempted curative instruction was simply not sufficient.

*Id.* at 533-34, 358 S.E.2d at 692 (emphasis added).

In the case before us, the trial court recognized the obvious prejudice to defendants of the statements made by the prospective juror, and elected to follow the "more prudent option" of *Mobley* and "start over with jury selection." The trial court elected, however, the unusual option of retaining the ninth juror, Mr. Burrage, whom the trial court stated was not in the courtroom when the statements in question were made, and then restoring only a portion of the peremptory challenges previously expended by defendants. In explaining its reasoning, the trial court stated:

> The peremptory challenges used Monday by everybody was before Ms. Mills spoke. And what I'm inclined to do, as you can tell, is to allow those peremptories to stay used. And the peremptories that were used on the new group that didn't hear the taint, those staying used. But allow the peremptories that were used at the time of the taint or that were used after the taint occurred to be restored prior to the new jurors coming into the courtroom.
>
> Now, as I indicated, it's going to take some time, I guess, for us to determine which jurors were challenged. We know who two of them were. Which jurors were challenged and who challenged them.
>
> MR. RIGSBEE: May I make inquiry?
>
> THE COURT: Yes, sir.

MR. RIGSBEE: Is it your proposal then, that the jurors—that the challenges that we used prior to Ms. Mills' statement from the jury box, that we're still charged with the use of those challenges?

THE COURT: Yes.

MR. RIGSBEE: Even though none of those jurors that we would use to—used those challenges to select will remain?

THE COURT: That's correct.

After an extended discussion, and a lengthy recess during which the court reporter reconstructed the use of peremptory challenges by counsel, both before and after the statements by Ms. Mills, the trial court dismissed the first eight jurors, retained the ninth (Mr. Burrage), restored three peremptory challenges to the State, and restored two challenges to each of the defendants. Thus, with eleven jurors remaining to be selected, defendants Howard and Rashid had three peremptory challenges remaining, and defendant Lee had four remaining peremptory challenges. All defendants objected to the procedure used by the trial court, arguing that they were prejudiced because it changed their entire jury selection strategy. Defendants exhausted their peremptory challenges during the remainder of the jury selection process, the trial court denied their requests for additional peremptory challenges, and defendants attempted to challenge jurors after their challenges were exhausted. Thus, defendants have properly preserved their objections to the procedure implemented by the trial court.

We agree with the arguments advanced by defendants. Although the trial court chose the second option discussed in *Mobley* and dismissed the jurors who heard the statement by Ms. Mills, it did not then "start over with jury selection." We think the plain meaning of that language would be that the trial court would dismiss the jury panel, restore all peremptory challenges to the parties, and resume the jury selection process. While there is some indication in the record that Mr. Burrage was not in the courtroom when the prejudicial remarks were made by Ms. Mills, no formal inquiry was made to determine this as a fact. Further, there was no inquiry as to whether Mr. Burrage and the eight excused jurors discussed the situation during the extended period they were closeted together awaiting the trial court's decision on defendants' motion to dismiss them. We do not perceive any sound reason to distinguish the situation in the case

before us from that in *Mobley*, so as to permit the procedure followed by the trial court. We do not disagree with the opinion expressed by the trial court that defendants are not entitled to a jury of their choice, but to an impartial jury to hear their cases. However, the innovative procedure followed by the trial court in this case completely changed defendants' strategy of jury selection by leaving them with a reduced number of peremptory challenges with which to select eleven jurors.

As a result, we hold that where inappropriate answers are given or comments made by a prospective juror during the jury selection process, the trial court should make an inquiry of all jurors, both accepted and prospective, to determine whether they heard the statements, the effect of such statements on them, and whether they could disabuse their minds of the harmful effects of the prejudicial comments. Unless the trial court determines that the statements were so minimally prejudicial that the members of the jury might reasonably be expected to disregard them and render a fair and impartial verdict without regard to such statements, the far more prudent course is to dismiss the panel, restore all peremptory challenges to all parties, and begin the process of jury selection anew. The right to trial by jury in criminal cases is such a fundamental part of our criminal justice system that it must be jealously guarded, even at the cost of delay and inconvenience in the trial court. Although we understand the desire of the trial court in this case to "fashion a remedy," judicial economy is not served by the necessity for a new trial of the charges against these defendants.

We further note that at the beginning of the jury selection process, the trial court ordered that trial counsel for the three defendants not consult with one another in the courtroom during the jury selection process. The trial court apparently felt that such consultations would be disruptive. It then renewed its order even after counsel suggested that they might move their chairs close to one another so as to avoid any disruption of the proceedings. We recognize and reaffirm the right of the trial court to preserve order and decorum in its courtroom. However, we perceive no reason from this record in this case for the particular procedure in this case, which effectively prohibited co-counsel from coordinating jury selection strategy. Although defendants did not assign that order of the trial court as error, we emphasize that such an order should be used only if necessary to maintain courtroom order during the proceedings, and that a record should be made of the reasons for implementation of

such a procedure by the trial court. This Court would then be able to review the record and confirm that the rights of codefendants to choose an impartial jury were not prejudicially compromised.

In light of our decision, we need not address the other assignments of error brought forward by defendants.

New trial.

Chief Judge EAGLES and Judge LEWIS concur.