ELMORE, Judge.
*319 Jose Rios (defendant) was convicted of trafficking in marijuana, conspiracy to traffic in marijuana, intentionally maintaining a dwelling for keeping and selling controlled substances, and possession of cocaine. Defendant appeals, arguing that the trial court erred in admitting evidence of his prior incarceration which was elicited by the State during cross-examination of defendant's witness. Because the evidence was inadmissible character evidence that prejudiced his defense, defendant is entitled to a new trial.
I. Background
On 27 June 2013, police executed a search warrant at 3108 Four Seasons Boulevard in Greensboro, where defendant lived with Oscar Morales and Junior Molina, the owner of the house. Morales was the only person in the house when police executed the warrant. Approximately twenty seconds elapsed from the time police knocked and announced their presence and when they entered the home.
Police first searched defendant's bedroom. Underneath the bed they found high-grade marijuana in a clear plastic jar and nine grams of cocaine in a tissue box. On top of an entertainment center was a box containing digital scales and 2,674 grams of marijuana in various plastic bags. They also found a wallet containing handwritten notes with names and contact information.
In Morales's bedroom, police found digital scales; an open box of sandwich bags; three canisters with false bottoms which are typically used to hide narcotics in transport; marijuana paraphernalia; a ledger describing different highs from different strands of marijuana; and 124 grams of marijuana, including 70.5 grams of compressed marijuana covered in plastic wrap. Officer Murphy testified that the marijuana found in Morales's bedroom was packaged the same way as that found in defendant's room.
The search of Molina's bedroom was less fruitful. Police found 4.5 grams of marijuana and a FedEx box with two vacuum-seal bags that had been cut open. The bags did not contain any marijuana residue *320 but police suspected the box had been used to ship narcotics. Officer Murphy testified that when drug traffickers "package marijuana in order to ship it across states, they will vacuum seal the marijuana one time and will wash it, put it inside of another vacuum seal bag and sometimes put it into a third vacuum seal bag, so you've got three layers, so basically one or two layers don't contain marijuana residue and the last one does."
During the search, police noticed a door leading to the garage secured by a hatch and padlock. They forced their way into the garage where they discovered a blue tote containing two large rectangular blocks of compressed marijuana wrapped in clear plastic, each weighing approximately ten pounds, and three one-gallon Ziploc bags, each containing about one pound of compressed marijuana. Next to the tote was a red cooler containing another square block of compressed marijuana weighing approximately twenty-eight pounds, and four vacuum-seal bags, each cut open and containing marijuana residue.
*236 All told, police seized 57.25 pounds of marijuana from the house: 7.25 pounds from defendant's room, .25 pounds from Morales's room, 4.5 grams from Molina's room, and 49.5 pounds from the garage.
Ten latent fingerprints were pulled from the vacuum-seal bags in Molina's bedroom, along with six more prints from the two compressed marijuana blocks in the garage. The latent impressions were photographed and submitted to a print examiner, Doreen Huntington. Huntington compared eighty-four images taken from the impressions with the fingerprints of four individuals-including defendant. She selected four of the eighty-four images for comparison and concluded that one of the fingerprints from the vacuum-seal bags in Molina's bedroom matched defendant's right thumb print. The remaining three images could not be matched to any individual.
Defendant called his girlfriend, Charla Hodges, to testify at trial. Hodges testified that she knew defendant in high school, from 2004 to 2008, and they reconnected in 2011. They began dating in 2012 when Hodges was in graduate school at the University of North Carolina at Chapel Hill. Defendant was attending Guilford Technical Community College while at the same time working for a furniture company. They would visit each other on the weekends and sometimes study together. Hodges explained that between work, school, and visits to Chapel Hill, defendant spent a substantial amount of time away from his house.
Hodges would visit defendant in Greensboro "usually twice a month on the weekends" and was familiar with his residence. She thought he kept his room tidy but his bedroom door did not lock and it had a hole *321 at the bottom where it had been kicked in. Hodges testified that when defendant visited her in Chapel Hill, other people would use defendant's bedroom: "The reason I know that is because when I would come and visit we would find other articles of clothing that didn't belong to us, or we would be told that someone else stayed in the room while he was away."
During that time, Hodges testified, she never saw defendant use or possess drugs, and had never seen "any of this marijuana before, this 50-odd pounds." She did recall occasions when defendant's roommates had friends over and they smoked marijuana, but she and defendant did not participate and kept to themselves in defendant's room. Hodges also testified that she never saw defendant go in or out of the garage, and could not recall ever seeing a box on top of the entertainment center in his room. She explained that defendant would not have been able to lift that box because he was recovering from a surgery earlier that year: "He couldn't lift anything-I apologize for being graphic, but he couldn't even pull up his pants."
The State then cross-examined Hodges, leading to the following exchange:
Q: You say that you saw him in high school and then you reconnected in 2011, is that right?
A: Uh-huh.
Q: There was some period of time you did not see him?
A: Yes, sir.
Q: He was not in Asheboro at that time?
A: I'm not sure.
Q: Do you have any idea where he was for, say, three and a half, four years?
MR. COALTER: Objection, Your Honor.
THE COURT: Overruled.
A: From what he has told me-well, yes, he did tell me where he was at that time, and he was incarcerated.
Q: Okay. After that, Ms. Hodges, you say you and he reconnected, is that right?
A: Uh-huh.
*322 ....
Q: This all comes as something of a surprise, then, to you, Ms. Hodges.
A: Uh-huh. Very much so.
Q: But you were, before you reconnected with him, aware of his past.
A: No, uh-huh.
Q: But, in your words, you were aware that he had been incarcerated.
A: Yes. After he told me.
MR. COALTER: Well, objection, Your Honor. Move to strike.
*237 THE COURT: Overruled. Motion denied.
MR. COLE: Nothing further, Your Honor.
At the conclusion of trial, the jury found defendant guilty on two counts of trafficking in marijuana, conspiracy to traffic in marijuana, intentionally maintaining a dwelling for keeping and selling controlled substances, and possession of cocaine. Defendant gave notice of appeal in open court.
II. Discussion
On appeal, defendant argues that evidence of his prior incarceration was inadmissible character evidence elicited for the sole purpose of showing defendant's propensity to commit the crimes for which he was charged. We note that defendant raised only general objections to the testimony at trial. Because the basis of his objection is apparent from the context, however, defendant properly preserved this issue for appellate review. See N.C. R. App. P. 10(a)(1) (2016) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.").
Character evidence is generally not admissible to prove conduct in conformity therewith. N.C. Gen. Stat. § 8C-1, Rule 404(a) (2015). A criminal defendant may, however, offer evidence of his or her own pertinent character trait. N.C. Gen. Stat. § 8C-1, Rule 404(a)(1) (2015). If the defendant so elects to "open the door" to his or her character, "proof may be *323 made by testimony as to reputation or by testimony in the form of an opinion." N.C. Gen. Stat. § 8C-1, Rule 405(a) (2015). The prosecution may then rebut with evidence of the defendant's bad character, including "relevant specific instances of conduct." N.C. Gen. Stat. § 8C-1, Rules 404(a)(1), 405(a).
Rule 404(b) more specifically prohibits "[e]vidence of other crimes, wrongs, or acts ... to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2015). Such evidence may be admissible for some independently relevant purpose, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." Id. But the "bare fact" of a defendant's prior conviction is not admissible under Rule 404(b). State v. Wilkerson , 148 N.C.App. 310, 327-28, 559 S.E.2d 5, 16 (Wynn, J., dissenting), rev'd per curiam for the reasons stated in the dissenting opinion , 356 N.C. 418, 571 S.E.2d 583 (2002). Rather, "it is the facts and circumstances underlying the conviction that Rule 404(b) allows." Id. at 321, 559 S.E.2d at 12.
In contrast to Rule 404(b), Rule 609 does allow evidence of a prior conviction but only to impeach the credibility of a witness. N.C. Gen. Stat. § 8C-1, Rule 609 (2015) ; see Wilkerson , 148 N.C.App. at 320, 559 S.E.2d at 12 (Wynn, J., dissenting) ("[P]rior convictions are admissible under Rule 609, while evidence of other crimes is admissible under Rule 404(b)."). Prior convictions may not " 'be considered as substantive evidence that [a defendant] committed the crimes' for which he is presently on trial by characterizing him as 'a bad man of a violent, criminal nature ... clearly more likely to be guilty of the crime charged.' " State v. Carter , 326 N.C. 243, 250, 388 S.E.2d 111, 116 (1990) (quoting State v. Tucker , 317 N.C. 532, 543, 346 S.E.2d 417, 423 (1986) ); see also State v. McClain , 240 N.C. 171, 173, 81 S.E.2d 364, 365 (1954) ("The general rule is that in a prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense." (citations omitted)).
Although in this case the State elicited testimony of defendant's prior incarceration rather than evidence of his conviction , there is no practical difference between the two. Each demonstrates to the jury that defendant committed a separate criminal offense in the past, and evidence that he was incarcerated necessarily includes the fact that he was convicted. Evidence of incarceration may, in fact, be more prejudicial where, as here, the jury is left to speculate as to the seriousness of the offense and the length of the sentence. And because defendant did not testify at trial, the State could not purport to *238 attack his credibility *324 with evidence of his incarceration. It is readily apparent instead that the State elicited the testimony to show defendant's propensity to commit the crimes for which he was on trial.
The State contends nonetheless that equating evidence of incarceration with evidence of a conviction runs afoul of our decision in State v. Goins , 232 N.C.App. 451, 754 S.E.2d 195, disc. review denied , --- N.C. ----, 763 S.E.2d 388 (2014). In that case, we rejected the argument that evidence of a defendant's recent incarceration amounts to "evidence of other crimes, wrongs, or acts" in violation of Rule 404(b). Id. at 458-59, 754 S.E.2d at 201. To the extent that Rule 404(b) contemplates the facts and circumstances underlying a conviction, Wilkerson , 148 N.C.App. at 321, 559 S.E.2d at 12 (Wynn, J., dissenting), then, admittedly, it would not include the bare fact of prior incarceration. Even so, like evidence of a conviction, evidence of incarceration is still character evidence under Rule 404(a). As such, it "is not admissible for the purpose of proving that [a person] acted in conformity therewith on a particular occasion" unless it fits within an enumerated exception. See N.C. Gen. Stat. § 8C-1, Rule 404(a)(1)-(3) (2015) ; see also State v. Streater , 197 N.C.App. 632, 647-48, 678 S.E.2d 367, 377 (2009) (treating testimony of previous incarceration as evidence of the defendant's bad character).
The State argues that, pursuant to Rule 404(a)(1), defendant offered evidence of his good character via Hodges's testimony, thereby opening the door for the State to rebut with evidence of defendant's bad character, i.e., his prior incarceration. Hodges did not testify as to defendant's reputation for being law-abiding, however, and she did not offer her opinion of the same. Her testimony was instead offered to support defendant's theory that the marijuana found in his room was attributable to Morales and Molina. The fact that Hodges had not seen defendant use or possess marijuana when she visited him was relevant to the defense, as were the facts that she saw defendant's roommates using marijuana, defendant's bedroom door was broken, and other people stayed in defendant's room when he visited Hodges. The State could rebut Hodges's testimony, as it did, by showing that there were long periods of time when Hodges was not at defendant's residence. But because defendant did not put his character in issue, the State could not purport to rebut Hodges's testimony with bad character evidence.
We might assume, as the State suggests, that defendant's prior incarceration had some other relevance. The nature of defendant's relationship with Hodges could have been a fact "of consequence to the determination of the action," N.C. Gen. Stat. § 8C-1, Rule 401 (2015), in which case defendant's incarceration was probative insomuch as it *325 showed a period of time when the two were not in contact with each other. Because Hodges had already testified that she did not see defendant for three years after high school, however, the probative value of defendant's precise whereabouts was minimal. The danger of unfair prejudice, in contrast, was decidedly grave such that the trial court's failure to exclude the evidence under Rule 403 amounts to an abuse of discretion. See N.C. Gen. Stat. § 8C-1, Rule 403 (2015) ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...."); Wilkerson , 148 N.C.App. at 327-28, 559 S.E.2d at 16 (Wynn, J., dissenting) (opining that where no exception applies, admitting the bare fact of a prior conviction violates Rule 403 because the evidence "is inherently prejudicial such that any probative value of the conviction is substantially outweighed by the danger of unfair prejudice" (footnote omitted)).
Finally, we think there is a reasonable possibility that, had the error not been committed, the jury would have reached a different result. See N.C. Gen. Stat. § 15A-1443(a) (2015). The evidence against defendant was largely-if not entirely-circumstantial, and a jury could have reasonably concluded that the marijuana and cocaine were attributable to defendant's roommates. Hodges's testimony presented a different picture of defendant, but evidence of his prior incarceration completely undercut his defense *239 and gave the jury an alternative basis to convict.
III. Conclusion
The evidence of defendant's prior incarceration was not admissible, and because there is a reasonable possibility that, absent the evidence, the jury would have reached a different result, defendant is entitled to a new trial.
NEW TRIAL.
Judge HUNTER, JR. concurs.
Judge DILLON dissents by separate opinion.