IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-604

Filed 18 June 2024

Stanly County, Nos. 18CRS000279, 18CRS050590

STATE OF NORTH CAROLINA

v.

ROBERT HAROLD BRUER

Appeal by Defendant from judgments entered 26 August 2022 by Judge Jonathan Wade Perry in Stanly County Superior Court. Heard in the Court of Appeals 20 March 2024.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Derek L. Hunter, for the State-Appellee.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender David S. Hallen, for Defendant-Appellant.*

COLLINS, Judge.

Defendant Robert Harold Bruer appeals from judgments entered upon jury verdicts finding him guilty of possession with intent to sell and deliver methamphetamine, possession of cocaine, and possession of a firearm by a felon. Defendant also pled guilty to having attained habitual felon status. Defendant argues, and the State concedes, that the trial court erred by denying his motion for a mistrial and that Defendant is entitled to a new trial. Defendant also argues that the trial court erred by denying his motion to dismiss the charge of possession of a

firearm by a felon and by failing to comply with statutory mandates regarding shackling. We conclude as follows: the trial court erred by denying Defendant's motion for a mistrial; the trial court did not err by denying Defendant's motion to dismiss; and Defendant invited any error regarding the use of shackles during the trial and failed to preserve the issue for appeal. Defendant is entitled to a new trial.

## I. Background

Defendant was employed as an auto mechanic at ASR Corporation ("ASR"), an auto mechanic shop located in Albemarle, North Carolina. On 5 April 2018, officers with the Albemarle Police Department arrived at ASR to execute a search warrant based on Defendant's alleged involvement in the sale of narcotics. When officers entered ASR, Defendant was standing with a group of employees near the office of the auto repair shop. Upon entry, the officers ordered the employees to lie on the ground; the employees complied, were handcuffed, and were led outside of the building.

During the search, the officers found the following items on the floor beside Defendant: a black bag containing nine grams of methamphetamine; one-and-a-half grams of cocaine; 90 alprazolam pills; and other pills of varying colors and types. The officers also found a Ziploc bag containing two grams of methamphetamine "on the floor close to the office." Inside the office in the bottom drawer of a desk, officers found a pistol and a bill of sale for a Dodge Truck made out to "Rob Brur." Officers also found a rifle and a shotgun leaning against the interior wall of the office.

Defendant was indicted for possession with intent to sell and deliver methamphetamine; possession with intent to sell and deliver cocaine; possession with intent to sell and deliver a schedule IV controlled substance; possession of a firearm by a felon; and having attained habitual felon status.

The case came on for trial on 22 August 2022. During jury selection, the State asked prospective jurors whether they knew anyone involved in the trial, and one of the prospective jurors, Mr. Webb, stated that he was a prison guard and knew Defendant from when Defendant was in prison. Defendant moved for a mistrial on the grounds that the jury had been tainted, arguing that at least 11 other prospective jurors, and possibly the other remaining 60 prospective jurors, heard Mr. Webb's statement. The trial court denied Defendant's motion. The jury found Defendant guilty of possession with intent to sell and deliver methamphetamine, possession of cocaine, and possession of a firearm by a felon. Defendant pled guilty to having attained habitual felon status and the trial court sentenced Defendant as a habitual felon to a total active sentence of 146 to 248 months' imprisonment. Defendant properly noticed appeal.

## II.    Discussion

Defendant argues, and the State concedes, that the trial court erred by denying his motion for a mistrial and that Defendant is entitled to a new trial. Defendant also argues that the trial court erred by denying his motion to dismiss the charge of possession of a firearm by a felon and by failing to comply with statutory mandates

regarding shackling. We address each argument in turn.

## A. Motion for Mistrial

Defendant first argues, and the State concedes, that the trial court erred by denying his motion for a mistrial after "a prospective juror announced in front of the jury pool that he had worked as a prison guard and knew [Defendant] from his time in prison."

"The right to trial by jury in criminal cases is such a fundamental part of our criminal justice system that it must be jealously guarded, even at the cost of delay and inconvenience in the trial court." *State v. Howard*, 133 N.C. App. 614, 619, 515 S.E.2d 740, 743 (1999). "It is axiomatic that criminal defendants have the right to be tried by an impartial jury free from outside influences." *State v. Barnes*, 345 N.C. 184, 203, 481 S.E.2d 44, 53-54 (1997) (citation omitted). N.C. Gen. Stat. § 15A-1061 safeguards this right and provides that a trial court "must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (2023); *see State v. Lynch*, 254 N.C. App. 334, 336, 803 S.E.2d 190, 192 (2017). "[T]he decision whether to grant a motion for mistrial rests within the sound discretion of the trial judge[,]" and this Court reviews the trial court's decision for an abuse of discretion. *Id.* (quotation marks and citation omitted).

"Our decision in *State v. Mobley*, 86 N.C. App. 528, 358 S.E.2d 689 (1987), sets

out the preferred procedure for the trial court to follow when a prospective juror answers a question with information obviously prejudicial to a criminal defendant." *Howard*, 133 N.C. App. at 616, 515 S.E.2d at 741. In *Mobley*, the trial court prejudicially erred by denying the defendant's motion to dismiss the prospective jurors when a prospective juror identified himself as a police officer and stated that he "had dealings with the defendant on similar charges." 86 N.C. App. at 532, 358 S.E.2d at 691. The trial court excused the juror for cause and instructed the jury to strike from their minds any reference the prospective juror had made to defendant. *Id.* at 532-33, 358 S.E.2d at 691. Defendant moved the trial court to dismiss the prospective jurors based on the juror's statement; the trial court denied the motion. *Id.* at 533, 358 S.E.2d at 691-92. On appeal, this Court granted Defendant a new trial, explaining:

> A statement by a police officer-juror that he knows the defendant from "similar charges" is likely to have a substantial effect on other jurors. The potential prejudice to the defendant is obvious. On the defendant's motion to dismiss the other jurors, the trial court, at the least, should have made inquiry of the other jurors as to the effect of the statement. The more prudent option for the trial court would have been to dismiss the jurors who heard the statement and start over with jury selection. In any event, the attempted curative instruction was simply not sufficient.

*Id.* at 533-34, 358 S.E.2d at 692.

In *Howard*, the trial court prejudicially erred by failing to dismiss the entire jury panel, restore all peremptory challenges to defendants, and begin the process of

jury selection from the beginning after one prospective juror stated during jury selection that one of the defendants looked familiar to her, she had been an officer at a detention center, and she knew the defendant "from there." 133 N.C. App. at 615, 515 S.E.2d at 741. Although "the trial court recognized the obvious prejudice to defendants of the statements made by the prospective juror," the trial court dismissed only eight of the nine jurors—retaining the ninth juror "whom the trial court stated was not in the courtroom when the statements in question were made"—and restored "only a portion of the peremptory challenges previously expended by defendants." *Id.* at 617, 515 S.E.2d at 742.

This Court explained that the trial court's decision to keep one juror and its failure to make a "formal inquiry" into whether or not that remaining juror heard the statement was prejudicial. *Id.* at 618, 515 S.E.2d at 742-43. We granted the defendants a new trial, holding that:

> [W]here inappropriate answers are given or comments made by a prospective juror during the jury selection process, the trial court should make an inquiry of all jurors, both accepted and prospective, to determine whether they heard the statements, the effect of such statements on them, and whether they could disabuse their minds of the harmful effects of the prejudicial comments. Unless the trial court determines that the statements were so minimally prejudicial that the members of the jury might reasonably be expected to disregard them and render a fair and impartial verdict without regard to such statements, the far more prudent course is to dismiss the panel, restore all peremptory challenges to all parties, and begin the process of jury selection anew.

*Id.* at 619, 515 S.E.2d at 743.

Here, jury selection took place off the record. The following exchange regarding Mr. Webb's statement that "[he] knew [Defendant] when [Defendant] was in prison and [he] was a guard" occurred after the trial court sent the prospective jurors out of the courtroom:

> The Court: All right. So let the record reflect the prospective jurors are out of sight and sound of the courtroom. So let me just recreate. So when we were asking -- not we. When [the State] asked the jury if they knew any of the participants in the case, Juror No. 5, Mr. Riley Webb, I think his exact response was, I knew [Defendant] from when I was a guard in prison. Was that what he said, or pretty close to it?
>
> [The State]: Your Honor, that's pretty close. It was something along the lines of -- I knew [Defendant] when he was in prison and I was a guard.
>
> The Court: Yeah.
>
> [The State]: Something along those lines, yes, sir.
>
> The Court: Okay. And that was it and then we stopped and y'all approached.
>
> [The State]: Yes.
>
> The Court: Okay. It took me a second because, like I said, I'm having a hard time hearing what they say. He may have said he was a guard in DOC. I must have missed that.
>
> . . . .
>
> The Court: Okay. All right. So given that, for the record I asked the prospective jurors to step out. I went ahead and excused Mr. Webb for cause. I explained to the jury that's because he personally knew [Defendant] and that would always be an issue as prospective jurors. Then I told them I was going to ask them to step out briefly so we could address the logistics. And I was trying to minimize because

> I don't know -- I mean, the 11 other ones in the box probably heard it. I don't know if the audience did or not. I don't know. Having said all that, though, [Defense Counsel], do you want to be heard as far as what transpired?
>
> [Defense Counsel]: Yes, sir, I do. . . .

Defendant then moved for a mistrial, arguing that Mr. Webb's statement caused him substantial and irreparable prejudice. The trial court denied Defendant's motion, stating, "I don't think it meets that substantial prejudice threshold as I read it. That's going to be my ruling in my discretion." The trial court then stated, "I'm not planning on saying anything else about [Mr. Webb's statement] because I don't want to draw their attention to it, especially for folks out in the audience who haven't heard it at all."

Here, as in *Mobley* and *Howard*, Mr. Webb was a prospective juror who was employed in the criminal justice system and who made a statement during jury selection that he knew Defendant from when Defendant was in prison. Just as "[a] statement by a police-officer juror that he knows the defendant from 'similar charges'" resulted in "obvious prejudice," Mr. Webb's statement that he knew Defendant from when Defendant was in prison resulted in "obvious prejudice" to Defendant. *See Howard*, 133 N.C. App. at 617, 515 S.E.2d at 742; *Mobley*, 86 N.C. App. at 533-34, 358 S.E.2d at 692. Additionally, although Defendant had been charged with possession of a firearm by a felon and the prospective jurors would have been aware of this charge, "[e]vidence of incarceration may, in fact, be more prejudicial [than

evidence of a conviction] where, as here, the jury is left to speculate as to the seriousness of the offense and the length of the sentence." *State v. Rios*, 251 N.C. App. 318, 323, 795 S.E.2d 234, 237 (2016). Furthermore, the trial court acknowledged that "the 11 other [jurors] in the box probably heard [Mr. Webb's statement]" and that it "[did not] know if the audience did or not."

The trial court, however, failed to "make an inquiry of all jurors, both accepted and prospective to determine whether they heard [Mr. Webb's] statement[]," failed to "determine . . . the effect of such [a] statement[] on them, and whether they could disabuse their minds of the harmful effects of the prejudicial comments[,]" and failed to determine that Mr. Webb's statement was "so minimally prejudicial that the members of the jury might reasonably be expected to disregard [it] and render a fair and impartial verdict." *Howard*, 133 N.C. App. at 619, 515 S.E.2d at 743. Accordingly, the trial court abused its discretion by denying Defendant's motion for a mistrial. *See id.*; *see also Lynch*, 254 N.C. App. at 336, 803 S.E.2d at 192.

**B. Motion to Dismiss**

Defendant next argues that the trial court erred by denying his motion to dismiss the charge of possession of a firearm by a felon for insufficient evidence that he possessed a firearm.

"This Court reviews the trial court's denial of a motion to dismiss de novo." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (italics and citation omitted). Under de novo review, this Court "considers the matter anew and freely

substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quotation marks and citations omitted).

Upon a defendant's motion to dismiss for insufficient evidence, the trial court must determine "whether there is substantial evidence (1) of each essential element of the offense charged . . . and (2) of defendant's being the perpetrator of such offense." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. McCoy*, 234 N.C. App. 268, 271-72, 759 S.E.2d 330, 334 (2014) (quotation marks and citation omitted). "The Court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence." *Id.* at 272, 759 S.E.2d at 334 (quotation marks and citation omitted).

"There are two elements to possession of a firearm by a felon: (1) defendant was previously convicted of a felony; and (2) thereafter possessed a firearm." *Id.* "Possession . . . may be actual or constructive. Actual possession requires that a party have physical or personal custody of an item. A person has constructive possession . . . when the item is not in his physical custody, but he nonetheless has the power and intent to control its disposition." *Id.* (quotation marks and citation omitted). However, "[u]nless a defendant has exclusive possession of the place where the contraband is found, the State must show other incriminating circumstances sufficient for the jury to find [that] a defendant had constructive possession." *State*

*v. Miller*, 363 N.C. 96, 99, 678 S.E.2d 592, 594 (2009) (citation omitted). Proximity to the contraband "can be sufficient [to prove constructive possession] when combined with other factors[,]" *State v. Livingston*, 290 N.C. App. 526, 530, 892 S.E.2d 265, 269 (2023), such as "indicia of the defendant's control over the place where the contraband was found." *State v. Bradshaw*, 366 N.C. 90, 94, 728 S.E.2d 345, 348 (2012) (citation omitted).

Here, the State put forth substantial evidence showing that Defendant constructively possessed a firearm: First, Defendant was standing in front of the office at ASR where three firearms were found; a rifle and a shotgun were found leaning against the wall inside the office and a pistol was found in a desk drawer in the office. Second, the pistol was found next to a bill of sale for a truck; the name on the bill of sale was "Rob Brur" and Defendant admitted that the bill of sale was for a truck that he had purchased. This is evidence that Defendant exercised "dominion and control" over the firearms found in the office. *See Bradshaw*, 366 N.C. at 96-97, 728 S.E.2d at 349-50 (determining that the defendant had dominion and control over contraband found in a bedroom where police also found bills with defendant's name on them in the same bedroom); *see also Livingston*, 290 N.C. App. at 531, 892 S.E.2d at 269-70 (holding that the defendant had dominion and control over contraband in a bag when that bag was touching a second, smaller bag that contained three of the defendant's identification cards and his credit card). Third, there was overwhelming testimony about Defendant's control of ASR and its premises. The testimony shows

that officers met with Defendant at ASR "30 to 40 times"; officers referred to, and the community thought of, ASR as "Rob's shop"; Defendant referred to ASR as "my shop"; and Defendant served as a confidential informant for law enforcement and allowed law enforcement to carry out numerous drug "busts" at ASR.

Viewing the evidence in the light most favorable to the State, we determine that there is substantial evidence to show that Defendant constructively possessed the firearms seized during the raid at ASR and that the trial court did not err in denying Defendant's motion to dismiss the charge of possession of a firearm by a felon.

**C. Shackling**

Defendant lastly argues that he is entitled to a new trial because the trial court, in violation of N.C. Gen. Stat. § 15A-1031, failed to make any findings regarding him being shackled and failed to instruct the jury regarding the shackles.

"[A] defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review." *State v. Barber*, 147 N.C. App. 69, 74, 554 S.E.2d 413, 416 (2001) (citation omitted). Furthermore, "[o]ur Supreme Court, and this Court, held that failure to object to shackling waives any error which may have been committed." *State v. Sellers*, 245 N.C. App. 556, 558, 782 S.E.2d 86, 88 (2016) (quotation marks and citations omitted).

Here, Defense counsel did not object to Defendant being shackled during trial and Defense counsel asked for and received accommodations regarding Defendant's

shackling. The State first brought to the trial court's attention, outside of the presence of the jury, the fact that Defendant was restrained with shackles underneath his pants. The trial court asked Defense counsel for his opinion on Defendant being restrained, and Defense counsel requested that Defendant be permitted to be seated on the witness stand before the jury was brought into the courtroom so that the jury would not see or hear the restraints and would not see Defendant "walk a little funny" due to the restraints. The trial court agreed to Defense counsel's request and further determined that it would dismiss the jury at the conclusion of Defendant's testimony and take a recess so that the jury would not see Defendant "getting down and walking[.]" Defendant further argues that, even if Defense counsel waived this issue by failing to object at trial, this "Court should invoke Rule 2 to waive the preservation requirement to prevent manifest injustice[.]" We decline to invoke Rule 2 and dismiss this argument.

### III.   Conclusion

The trial court erred by denying Defendant's motion for a mistrial, and Defendant is entitled to a new trial. However, the trial court did not err by denying Defendant's motion to dismiss the charge of possession of a firearm by a felon, and Defendant invited any error regarding the use of shackles during the trial and failed to preserve the issue for appeal.

NEW TRIAL.

Chief Judge DILLON and Judge GORE concur.