IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-108

 Filed: 20 December 2016

Guilford County, Nos. 13 CRS 083098–101

STATE OF NORTH CAROLINA

 v.

JOSE JESUS RIOS, Defendant.

 Appeal by defendant from judgments entered 18 June 2015 by Judge Stanley

L. Allen in Guilford County Superior Court. Heard in the Court of Appeals 5 October

2016.

 Attorney General Roy Cooper, by Assistant Attorney General Stuart M. (Jeb)
 Saunders, for the State.

 Gilda C. Rodriguez for defendant-appellant.

 ELMORE, Judge.

 Jose Rios (defendant) was convicted of trafficking in marijuana, conspiracy to

traffic in marijuana, intentionally maintaining a dwelling for keeping and selling

controlled substances, and possession of cocaine. Defendant appeals, arguing that

the trial court erred in admitting evidence of his prior incarceration which was

elicited by the State during cross-examination of defendant’s witness. Because the

evidence was inadmissible character evidence that prejudiced his defense, defendant

is entitled to a new trial.
 STATE V. RIOS

 Opinion of the Court

 I. Background

 On 27 June 2013, police executed a search warrant at 3108 Four Seasons

Boulevard in Greensboro, where defendant lived with Oscar Morales and Junior

Molina, the owner of the house. Morales was the only person in the house when police

executed the warrant. Approximately twenty seconds elapsed from the time police

knocked and announced their presence and when they entered the home.

 Police first searched defendant’s bedroom. Underneath the bed they found

high-grade marijuana in a clear plastic jar and nine grams of cocaine in a tissue box.

On top of an entertainment center was a box containing digital scales and 2,674

grams of marijuana in various plastic bags. They also found a wallet containing

handwritten notes with names and contact information.

 In Morales’s bedroom, police found digital scales; an open box of sandwich bags;

three canisters with false bottoms which are typically used to hide narcotics in

transport; marijuana paraphernalia; a ledger describing different highs from

different strands of marijuana; and 124 grams of marijuana, including 70.5 grams of

compressed marijuana covered in plastic wrap. Officer Murphy testified that the

marijuana found in Morales’s bedroom was packaged the same way as that found in

defendant’s room.

 The search of Molina’s bedroom was less fruitful. Police found 4.5 grams of

marijuana and a FedEx box with two vacuum-seal bags that had been cut open. The

 -2-
 STATE V. RIOS

 Opinion of the Court

bags did not contain any marijuana residue but police suspected the box had been

used to ship narcotics. Officer Murphy testified that when drug traffickers “package

marijuana in order to ship it across states, they will vacuum seal the marijuana one

time and will wash it, put it inside of another vacuum seal bag and sometimes put it

into a third vacuum seal bag, so you’ve got three layers, so basically one or two layers

don’t contain marijuana residue and the last one does.”

 During the search, police noticed a door leading to the garage secured by a

hatch and padlock. They forced their way into the garage where they discovered a

blue tote containing two large rectangular blocks of compressed marijuana wrapped

in clear plastic, each weighing approximately ten pounds, and three one-gallon Ziploc

bags, each containing about one pound of compressed marijuana. Next to the tote

was a red cooler containing another square block of compressed marijuana weighing

approximately twenty-eight pounds, and four vacuum-seal bags, each cut open and

containing marijuana residue.

 All told, police seized 57.25 pounds of marijuana from the house: 7.25 pounds

from defendant’s room, .25 pounds from Morales’s room, 4.5 grams from Molina’s

room, and 49.5 pounds from the garage.

 Ten latent fingerprints were pulled from the vacuum-seal bags in Molina’s

bedroom, along with six more prints from the two compressed marijuana blocks in

the garage. The latent impressions were photographed and submitted to a print

 -3-
 STATE V. RIOS

 Opinion of the Court

examiner, Doreen Huntington. Huntington compared eighty-four images taken from

the impressions with the fingerprints of four individuals—including defendant. She

selected four of the eighty-four images for comparison and concluded that one of the

fingerprints from the vacuum-seal bags in Molina’s bedroom matched defendant’s

right thumb print. The remaining three images could not be matched to any

individual.

 Defendant called his girlfriend, Charla Hodges, to testify at trial. Hodges

testified that she knew defendant in high school, from 2004 to 2008, and they

reconnected in 2011. They began dating in 2012 when Hodges was in graduate school

at the University of North Carolina at Chapel Hill. Defendant was attending Guilford

Technical Community College while at the same time working for a furniture

company. They would visit each other on the weekends and sometimes study

together. Hodges explained that between work, school, and visits to Chapel Hill,

defendant spent a substantial amount of time away from his house.

 Hodges would visit defendant in Greensboro “usually twice a month on the

weekends” and was familiar with his residence. She thought he kept his room tidy

but his bedroom door did not lock and it had a hole at the bottom where it had been

kicked in. Hodges testified that when defendant visited her in Chapel Hill, other

people would use defendant’s bedroom: “The reason I know that is because when I

 -4-
 STATE V. RIOS

 Opinion of the Court

would come and visit we would find other articles of clothing that didn’t belong to us,

or we would be told that someone else stayed in the room while he was away.”

 During that time, Hodges testified, she never saw defendant use or possess

drugs, and had never seen “any of this marijuana before, this 50-odd pounds.” She

did recall occasions when defendant’s roommates had friends over and they smoked

marijuana, but she and defendant did not participate and kept to themselves in

defendant’s room. Hodges also testified that she never saw defendant go in or out of

the garage, and could not recall ever seeing a box on top of the entertainment center

in his room. She explained that defendant would not have been able to lift that box

because he was recovering from a surgery earlier that year: “He couldn’t lift

anything—I apologize for being graphic, but he couldn’t even pull up his pants.”

 The State then cross-examined Hodges, leading to the following exchange:

 Q: You say that you saw him in high school and then you
 reconnected in 2011, is that right?

 A: Uh-huh.

 Q: There was some period of time you did not see him?

 A: Yes, sir.

 Q: He was not in Asheboro at that time?

 A: I’m not sure.

 Q: Do you have any idea where he was for, say, three and
 a half, four years?

 -5-
 STATE V. RIOS

 Opinion of the Court

 MR. COALTER: Objection, Your Honor.

 THE COURT: Overruled.

 A: From what he has told me—well, yes, he did tell me
 where he was at that time, and he was incarcerated.

 Q: Okay. After that, Ms. Hodges, you say you and he
 reconnected, is that right?

 A: Uh-huh.

 ....

 Q: This all comes as something of a surprise, then, to you,
 Ms. Hodges.

 A: Uh-huh. Very much so.

 Q: But you were, before you reconnected with him, aware
 of his past.

 A: No, uh-huh.

 Q: But, in your words, you were aware that he had been
 incarcerated.

 A: Yes. After he told me.

 MR. COALTER: Well, objection, Your Honor. Move to
 strike.

 THE COURT: Overruled. Motion denied.

 MR. COLE: Nothing further, Your Honor.

 At the conclusion of trial, the jury found defendant guilty on two counts of

trafficking in marijuana, conspiracy to traffic in marijuana, intentionally

 -6-
 STATE V. RIOS

 Opinion of the Court

maintaining a dwelling for keeping and selling controlled substances, and possession

of cocaine. Defendant gave notice of appeal in open court.

 II. Discussion

 On appeal, defendant argues that evidence of his prior incarceration was

inadmissible character evidence elicited for the sole purpose of showing defendant’s

propensity to commit the crimes for which he was charged. We note that defendant

raised only general objections to the testimony at trial. Because the basis of his

objection is apparent from the context, however, defendant properly preserved this

issue for appellate review. See N.C. R. App. P. 10(a)(1) (2016) (“In order to preserve

an issue for appellate review, a party must have presented to the trial court a timely

request, objection, or motion, stating the specific grounds for the ruling the party

desired the court to make if the specific grounds were not apparent from the

context.”).

 Character evidence is generally not admissible to prove conduct in conformity

therewith. N.C. Gen. Stat. § 8C-1, Rule 404(a) (2015). A criminal defendant may,

however, offer evidence of his or her own pertinent character trait. N.C. Gen. Stat. §

8C-1, Rule 404(a)(1) (2015). If the defendant so elects to “open the door” to his or her

character, “proof may be made by testimony as to reputation or by testimony in the

form of an opinion.” N.C. Gen. Stat. § 8C-1, Rule 405(a) (2015). The prosecution may

 -7-
 STATE V. RIOS

 Opinion of the Court

then rebut with evidence of the defendant’s bad character, including “relevant specific

instances of conduct.” N.C. Gen. Stat. § 8C-1, Rules 404(a)(1), 405(a).

 Rule 404(b) more specifically prohibits “[e]vidence of other crimes, wrongs, or

acts . . . to prove the character of a person in order to show that he acted in conformity

therewith.” N.C. Gen. Stat. § 8C-1, Rule 404(b) (2015). Such evidence may be

admissible for some independently relevant purpose, “such as proof of motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake,

entrapment or accident.” Id. But the “bare fact” of a defendant’s prior conviction is

not admissible under Rule 404(b). State v. Wilkerson, 148 N.C. App. 310, 327–28, 559

S.E.2d 5, 16 (Wynn, J., dissenting), rev’d per curiam for the reasons stated in the

dissenting opinion, 356 N.C. 418, 571 S.E.2d 583 (2002). Rather, “it is the facts and

circumstances underlying the conviction that Rule 404(b) allows.” Id. at 321, 559

S.E.2d at 12.

 In contrast to Rule 404(b), Rule 609 does allow evidence of a prior conviction

but only to impeach the credibility of a witness. N.C. Gen. Stat. § 8C-1, Rule 609

(2015); see Wilkerson, 148 N.C. App. at 320, 559 S.E.2d at 12 (Wynn, J., dissenting)

(“[P]rior convictions are admissible under Rule 609, while evidence of other crimes is

admissible under Rule 404(b).”). Prior convictions may not “ ‘be considered as

substantive evidence that [a defendant] committed the crimes’ for which he is

presently on trial by characterizing him as ‘a bad man of a violent, criminal nature .

 -8-
 STATE V. RIOS

 Opinion of the Court

. . clearly more likely to be guilty of the crime charged.’ ” State v. Carter, 326 N.C.

243, 250, 388 S.E.2d 111, 116 (1990) (quoting State v. Tucker, 317 N.C. 532, 543, 346

S.E.2d 417, 423 (1986)); see also State v. McClain, 240 N.C. 171, 173, 81 S.E.2d 364,

365 (1954) (“The general rule is that in a prosecution for a particular crime, the State

cannot offer evidence tending to show that the accused has committed another

distinct, independent, or separate offense.” (citations omitted)).

 Although in this case the State elicited testimony of defendant’s prior

incarceration rather than evidence of his conviction, there is no practical difference

between the two. Each demonstrates to the jury that defendant committed a separate

criminal offense in the past, and evidence that he was incarcerated necessarily

includes the fact that he was convicted. Evidence of incarceration may, in fact, be

more prejudicial where, as here, the jury is left to speculate as to the seriousness of

the offense and the length of the sentence. And because defendant did not testify at

trial, the State could not purport to attack his credibility with evidence of his

incarceration. It is readily apparent instead that the State elicited the testimony to

show defendant’s propensity to commit the crimes for which he was on trial.

 The State contends nonetheless that equating evidence of incarceration with

evidence of a conviction runs afoul of our decision in State v. Goins, 232 N.C. App.

451, 754 S.E.2d 195, disc. review denied, ____ N.C. ____, 763 S.E.2d 388 (2014). In

that case, we rejected the argument that evidence of a defendant’s recent

 -9-
 STATE V. RIOS

 Opinion of the Court

incarceration amounts to “evidence of other crimes, wrongs, or acts” in violation of

Rule 404(b). Id. at 458–59, 754 S.E.2d at 201. To the extent that Rule 404(b)

contemplates the facts and circumstances underlying a conviction, Wilkerson, 148

N.C. App. at 321, 559 S.E.2d at 12 (Wynn, J., dissenting), then, admittedly, it would

not include the bare fact of prior incarceration. Even so, like evidence of a conviction,

evidence of incarceration is still character evidence under Rule 404(a). As such, it “is

not admissible for the purpose of proving that [a person] acted in conformity

therewith on a particular occasion” unless it fits within an enumerated exception.

See N.C. Gen. Stat. § 8C-1, Rule 404(a)(1)–(3) (2015); see also State v. Streater, 197

N.C. App. 632, 647–48, 678 S.E.2d 367, 377 (2009) (treating testimony of previous

incarceration as evidence of the defendant’s bad character).

 The State argues that, pursuant to Rule 404(a)(1), defendant offered evidence

of his good character via Hodges’s testimony, thereby opening the door for the State

to rebut with evidence of defendant’s bad character, i.e., his prior incarceration.

Hodges did not testify as to defendant’s reputation for being law-abiding, however,

and she did not offer her opinion of the same. Her testimony was instead offered to

support defendant’s theory that the marijuana found in his room was attributable to

Morales and Molina. The fact that Hodges had not seen defendant use or possess

marijuana when she visited him was relevant to the defense, as were the facts that

she saw defendant’s roommates using marijuana, defendant’s bedroom door was

 - 10 -
 STATE V. RIOS

 Opinion of the Court

broken, and other people stayed in defendant’s room when he visited Hodges. The

State could rebut Hodges’s testimony, as it did, by showing that there were long

periods of time when Hodges was not at defendant’s residence. But because

defendant did not put his character in issue, the State could not purport to rebut

Hodges’s testimony with bad character evidence.

 We might assume, as the State suggests, that defendant’s prior incarceration

had some other relevance. The nature of defendant’s relationship with Hodges could

have been a fact “of consequence to the determination of the action,” N.C. Gen. Stat.

§ 8C-1, Rule 401 (2015), in which case defendant’s incarceration was probative

insomuch as it showed a period of time when the two were not in contact with each

other. Because Hodges had already testified that she did not see defendant for three

years after high school, however, the probative value of defendant’s precise

whereabouts was minimal. The danger of unfair prejudice, in contrast, was decidedly

grave such that the trial court’s failure to exclude the evidence under Rule 403

amounts to an abuse of discretion. See N.C. Gen. Stat. § 8C-1, Rule 403 (2015)

(“Although relevant, evidence may be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice . . . .”); Wilkerson, 148 N.C. App. at 327–

28, 559 S.E.2d at 16 (Wynn, J., dissenting) (opining that where no exception applies,

admitting the bare fact of a prior conviction violates Rule 403 because the evidence

 - 11 -
 STATE V. RIOS

 Opinion of the Court

“is inherently prejudicial such that any probative value of the conviction is

substantially outweighed by the danger of unfair prejudice” (footnote omitted)).

 Finally, we think there is a reasonable possibility that, had the error not been

committed, the jury would have reached a different result. See N.C. Gen. Stat. § 15A-

1443(a) (2015). The evidence against defendant was largely—if not entirely—

circumstantial, and a jury could have reasonably concluded that the marijuana and

cocaine were attributable to defendant’s roommates. Hodges’s testimony presented

a different picture of defendant, but evidence of his prior incarceration completely

undercut his defense and gave the jury an alternative basis to convict.

 III. Conclusion

 The evidence of defendant’s prior incarceration was not admissible, and

because there is a reasonable possibility that, absent the evidence, the jury would

have reached a different result, defendant is entitled to a new trial.

 NEW TRIAL.

 Judge HUNTER, JR. concurs.

 Judge DILLON dissents by separate opinion.

 - 12 -
No. COA16-108 – STATE v. RIOS

 DILLON, Judge, dissenting.

 I find no prejudicial error in this case.

 I agree with the majority that the prosecution’s questioning of Defendant’s

girlfriend regarding Defendant’s prior incarceration was error.

 Nevertheless, to the extent that the prosecutor crossed the line, I do not believe

that error was prejudicial. There was substantial evidence that Defendant was a

resident of the three-bedroom house and was involved in the drug activity occurring

there. For instance, in one of the bedrooms, officers found several pounds of

marijuana on top of the dresser and under the bed, Defendant’s personal documents,

medication bearing Defendant’s name, and Defendant’s personal effects, along with

other evidence establishing that Defendant stayed in that room and did not have a

roommate. Also, officers discovered Defendant’s thumbprint on drug packaging,

which was found in another part of the house. Defendant’s evidence was weak in

comparison, comprising mainly of testimony from Defendant’s girlfriend that

Defendant was not involved, much of which was contradicted by the physical

evidence.

 There is a remote chance that the reference to Defendant’s incarceration,

which was for some undisclosed reason and undisclosed period in the prior decade,

could have had some impact. However, based on the evidence of Defendant’s guilt in

this case (among other things, the drugs in his room and his thumbprint on the drug

packaging material), I do not believe that there is a reasonable possibility that the
 STATE V. RIOS

 DILLON, J., dissenting

trial would have ended differently had the jury not heard the reference to Defendant’s

prior incarceration.

 2